[S. F. No. 2168.   Department One. — June 7, 1901.]

# JENNIE A. VALENTINE, Executrix, etc., et al., Respondents, v. DONOHOE-KELLY BANKING COMPANY, Appellant.

GUARANTY OF NOTES AND BANK ACCOUNT — PLEDGE — PAYMENT OF NOTES — INTEREST CHARGED IN ACCOUNT — WAIVER OF CLAIM AGAINST ESTATE. — Where a guarantor of notes to a bank, and of the bank account of a partnership, and of a corporation which succeeded to its business, pledged a note and mortgage as security therefor, and the monthly interest on the notes was charged in the bank account, till the death of the pledgor, at which time a credit was due to the company, after which the pledge was converted into cash and in part applied by the bank, at the request of the administrator, to payment of the notes, and the bank charged only the unpaid principal of the notes and twenty-three days' interest not charged in the bank account, and, upon payment thereof, surrendered the notes as paid and canceled, the transaction must be deemed as an intended payment of the notes in full, and as a waiver by the bank of any further claim to interest against the estate.

ID. — INTEREST REGARDED AS PAID — BALANCE OF CREDIT. — The bank having regarded the interest as paid, by being charged against receipts in the running account of the company, which showed a balance to its credit at the death of the pledgor, the court must regard it as paid.

ID. — SURRENDER AND CANCELLATION OF NOTES — STATEMENT OF BANK. — The fact that the notes were surrendered up and canceled upon what the bank stated to be the balance due for principal and interest, is almost a conclusive circumstance to show payment, in the absence of fraud or mistake.

ID. — WAIVER OF CLAIM TO INTEREST — ACCEPTANCE OF PRINCIPAL — CONSTRUCTION OF CODE. — Under section 3290 of the Civil Code, accepting payment of the whole principal, as such, waives all claim to interest. The language of this section is broad, and applies to express contracts.

ID. — ESTATE NOT RESPONSIBLE FOR OVERDRAFT ACCRUING AFTER DEATH — CESSATION OF GUARANTY. — The estate of the deceased guarantor was not responsible for any overdraft of the bank account that accrued after his death; but the continuing guaranty of the bank account terminated, as to future advances, with the bank's knowledge of his death.

ID. — SURETYSHIP — DISCHARGE OF PLEDGE FROM LIABILITY — RECOVERY OF RESIDUE BY ADMINISTRATOR. — The pledgor and the pledgee were each in the position of suretyship or guaranty for the company for the payment of the notes to the bank, and of the bank account, as

it existed at the time of notice of the death of the pledgor, and the residue of the pledge was discharged from suretyship when the notes were paid by the administrator, and may be recovered by him from the bank.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.    J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Philip G. Galpin, for Appellant.

Lindley & Eickhoff, Lloyd & Wood, and A. Heyneman, for Respondents.

THE COURT.—This appeal is by the defendant corporation from the judgment and an order denying its motion for a new trial.

The facts are substantially as follows: Prior to January 24, 1896, a certain copartnership existed under the name and style of "Francis and Valentine." T. B. Valentine, plaintiff's testate, was, at all times during its existence, a member of said firm. The said copartnership did its banking business with defendant. Prior to March, 1896, the said copartnership became indebted to defendant upon seven promissory notes aggregating $33,975.85, which notes were executed by the said copartnership to said T. B. Valentine, and by him indorsed and transferred to defendant. On February 8, 1896, the said Valentine assigned to defendant a certain note and mortgage made to him by the Belvedere Land Company, of the value of fifty thousand dollars, as security for the payment of all of said promissory notes, of all sums due by said copartnership to defendant, and of all advances that might thereafter be made by said defendant to said firm. On January 24, 1896, the members of the said copartnership incorporated under the corporate name of "Francis-Valentine Company," the corporation becoming the successor in business of the former copartnership. The account current of the copartnership with defendant was closed, and on March 2, 1896, the corporation —Francis-Valentine Company—opened an account with defendant, depositing on said date, to its credit, $1,220. At the time of so opening said account with the defendant by the corporation, — Francis-Valentine Company, — the said T. B.

Valentine made a new agreement with defendant, that the fifty-thousand-dollar note and mortgage should continue to be held by defendant as security for the said seven notes, and also for all indebtedness and loans then existing, and for all future advances that might be made by defendant to said Francis-Valentine Company. The transactions by defendant with the copartnership may therefore be considered eliminated from the case, and are only stated for the purpose of clearly showing the circumstances leading up to the contract by which the fifty-thousand-dollar mortgage was transferred and delivered to defendant by said Valentine in his lifetime. After March 2, 1896, the said Francis-Valentine Company continued its account current with defendant, in which account the monthly interest on the seven notes was charged to the Francis-Valentine Company. The interest upon the said notes was payable monthly, and during the existence of the copartnership, and before the incorporation of the Francis-Valentine Company, it had been charged by defendant to the copartnership. In fact, the same arrangement continued as to the security, notes, advances, and overdrafts after the incorporation of the Francis-Valentine Company as before, except that the account was kept with the new corporation instead of the former copartnership. No change had been made as to the arrangements herein narrated, up to October 27, 1896, at which time Valentine died. The defendant received knowledge of the death of Valentine on the same day. At the time Valentine died, the Francis-Valentine Company had a credit of $201.07 in its account current with defendant. After the death of Valentine, defendant presented a claim against his estate for the principal of the seven notes, in which claim no interest was included. It is therefore evident that at the time of the death of Valentine the interest upon the notes had been fully paid.

After Valentine died, the Francis-Valentine Company continued its account current with defendant, in which account the defendant continued to charge the monthly interest upon the notes, as it had done during the lifetime of Valentine. This continued until November 23, 1897, at which time the executors of the Valentine estate sold the note and mortgage for fifty thousand dollars. The defendant, at the time of the said sale, agreed with the representatives of Valentine's estate to deliver up the note and mortgage upon condition that the

CXXXIII. Cal.—13

fifty thousand dollars should be deposited with defendant in lieu of the mortgage, to be held by defendant as security to the same, and no greater, extent that the mortgage had been held. The money was accordingly deposited with defendant in accordance with the agreement, and a new account opened in the name of the estate of Valentine, to which account the fifty thousand dollars was credited. The plaintiffs then informed defendant that they desired to pay the said notes, and asked defendant how much money was required. Defendant gave them a written memorandum, as follows:—

"Principal ..............................$30,835.10
. Interest.................................   147.92
                                          ──────────
                                          $30,983.02"

The item of interest was for twenty-three days in November, the interest up to November 1st having been charged to the Francis-Valentine Company, in its account with defendant. The plaintiffs then gave defendant a check for said sum of $30,983.02 against the new account, which check was accepted by defendant, and the notes delivered up and canceled. Plaintiffs drew further checks against the fifty thousand dollars, leaving finally a balance of $7,459.78 to their credit on the deposit account, which is the amount in controversy here, and for which plaintiffs recovered judgment. The defendant, although having charged this amount to the Francis-Valentine Company in its current account, claims that the said amount is the amount of interest that the notes earned after they were sold to defendant, including interest earned after the death of Valentine, as well as before. There is no question as to the facts that the interest is charged to and is due defendant by the Francis-Valentine Company, and that the notes were surrendered up and canceled. We are therefore clearly of the opinion that the notes have been fully paid. This was manifestly the intention of all the parties, as shown by their conduct. The fact that the notes were surrendered up and canceled upon payment of what defendant stated to be the balance due for principal and interest is almost a conclusive circumstance, in the absence of fraud or mistake. It is provided in section 3290 of the Civil Code that "accepting payment of the whole principal, as such, waives all claim to interest." This section is broad in its language, and applies to express contracts. (*Los Angeles* v. *City Bank*, 100 Cal. 22.)

The remaining question, then, is as to whether or not the estate of Valentine is responsible for the overdraft of the Francis-Valentine Company that accrued after the death of Valentine.   It is claimed by both plaintiff and defendant— and we think correctly—that the fifty-thousand-dollar mortgage which was deposited and assigned to defendant was a pledge.   It was a deposit of personal property by way of security, and, as such, comes within the definition of a pledge as laid down in sections 2986, 2987, and 2992 of the Civil Code. By the deposit of the mortgage, Valentine became a surety for the Francis-Valentine Company.   A surety is defined to be one "who, at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, or hypothecates property as security therefor."   When Valentine hypothecated the note and mortgage as security for the notes and for future advances, he became a surety for the Francis-Valentine Company, under the definition given in the above section.   Not only this, but the note and mortgage occupied the position of surety for said company to defendant.

It is said in Brandt on Suretyship and Guaranty (2d ed., sec. 34): "When property of any kind is mortgaged or pledged by the owner to answer for the debt, default, or miscarriage of another person, such property occupies the position of a surety or guarantor, and anything which would discharge an individual surety or guarantor who was personally liable will, under similar circumstances, discharge such property.   This rule is applicable to every variety of circumstances."   (See cases cited in note 4 to sec. 34.)

The guaranty for future advances ceased when Valentine died and defendant had notice of his death.   He could at any time during life have terminated the guaranty as to future advances, by giving notice.   His death, with knowledge thereof, was notice.   At his death his property vested in others, subject to all valid liens thereon.   In case of a continuing guaranty, each advance made by the guarantee constituted a fresh consideration, and, when made, an irrevocable promise on the part of the living guarantor.   A dead guarantor can make no promise.   The guarantee, after knowledge of the death of the guarantor, cannot be held to have made the advance at the request of a dead man.   (*Jordan* v. *Dobbins*, 122 Mass.

170;[1] *Hyland* v. *Habich*, 150 Mass. 112; *Gay* v. *Ward*, 67 Conn. 156;[2] Brandt on Suretyship and Guaranty, 2d ed., sec. 134.)

In this case the note and mortgage were security to defendant for the amount of indebtedness due to it from the Francis-Valentine Company at the time of the death of Valentine, and for all interest that would have accrued upon the notes according to their terms after Valentine's death, but the interest was paid by being charged in the running account of the company. It was so regarded by defendant, and we must so regard it.

The judgment and order are affirmed.

---

[1] 23 Am. Rep. 305.            [2] 15 Am. St. Rep. 174.