AMERICAN OIL COMPANY *v.* ESTATE OF WIGLEY

No. 43215        December 7, 1964        169 So. 2d 454

*Wells, Thomas & Wells, Roland D. Marble,* Jackson, for appellant.

*George J. Thornton,* Kosciusko, for appellee.

BRADY, TOM P., J.

This cause arose when American Oil Company, assignee or successor of Pan-Am Southern Corporation, filed a claim on October 1, 1963, in the sum of $21,759.94 for merchandise sold, which claim was probated and allowed on that date against the estate of W. E. Wigley, deceased, based upon a guaranty executed on March 13, 1952 by the deceased, W. E. Wigley, in favor of the obligee, Pan-Am Southern Corporation. The executrix, Mrs. Era Wigley, objected to the probated account on October 12, 1963. The American Oil Company filed an answer and cross bill to the objection to the probated account of the executrix. The American Oil Company then exhibited the original guaranty signed by W. E. Wigley on March 13, 1952, after the expiration of the six months' period for the probating of accounts. No

suit was instituted by the American Oil Company against one W. R. Johnson, the principal debtor of appellant, to enforce the payment of the $21,759,94 alleged to be due and payable from the said W. R. Johnson. From a final decree of the Chancery Court of Attala County, Mississippi, holding in behalf of the executrix, this appeal is prosecuted.

The record discloses that in the court below a stipulation of facts was agreed upon between appellant and appellee, as complainant and defendant, which succinctly gives the essential facts upon which this appeal is predicated. The final decree of the chancellor moreover embodies the agreed stipulation of facts. Since these facts are agreed upon, they will not be considered unless their interpretation or significance is contested by one of the litigants. The stipulation of facts is as follows:

"It is hereby stipulated by and between Mrs. Era Wigley, Executrix and the American Oil Company that this Honorable Court in considering the 'Objection to Probated Account' filed by Mrs. Era Wigley, Executrix, and the 'Answer and Cross-Petition' filed by the American Oil Company, may base its opinion of the following agreed and stipulated facts, to-wit:

"1. That W. E. Wigley departed this life testate and his Will has been duly admitted to probate in the Chancery Court of Attala County, Mississippi, and the said Mrs. Era Wigley was duly appointed Executrix and has now qualified.

"2. That the said Mrs. Era Wigley, Executrix, gave Notice to Creditors by publication of proper notice in the Star Herald, a newspaper published in the City of Kosciusko, Attala County, Mississippi, the first Notice being published on the 11th day of April, 1963, and subsequent Notices being published on April 18, 1963, April 25, 1963, and May 2, 1963.

"3. That proper proof of Publication was filed herein on the 22nd day of July, 1963.

"4. That on the 1st day of October, 1963, D. J. Loque delivered to Mrs. Edith Harpole, Chancery Clerk of Attala County, Mississippi, a claim of the American Oil Company against the Estate of W. E. Wigley, deceased, which claim consisted of:

"A. Affidavit of H. D. Fee, Assistant Regional Credit Manager of the American Oil Company.

"B. An Attached claim of the American Oil Company against the Estate of W. E. Wigley, as Guarantor, of the Account of W. R. Johnson, Durant, Mississippi, which arose after the American Oil Company had notice of death of W. E. Wigley.

"C. Photostatic copy of 'Guaranty' signed by W. E. Wigley on the 13th day of March, 1952.

"5. That the said Mrs. Edith Harpole, Chancery Clerk, probated and allowed the claim for $21,759.94 on the 1st day of October, 1963.

"6. That Mrs. Era Wigley, Executrix, filed an 'Objection to Probated Account' on the *12th* day of October, 1963.

"7. That the American Oil Company has now filed an Answer to Objection to Probated Account and Cross-Petition in response to said objection to said Mrs. Era Wigley, Executrix, to which Answer the American Oil Company exhibited the Original Guaranty, signed by W. E. Wigley on March 13, 1952.

"8. That the American Oil Company has not as yet filed suit against W. R. Johnson, Principal Debtor, to enforce payment of the amount of $21,759.94 alleged due and payable from the said W. R. Johnson to the American Oil Company. No part of this account has been paid by W. E. Wigley."

The guaranty being the contractual basis upon which this suit is predicated, it is therefore essential that the pertinent and determinative parts of the guaranty be

considered. These essentials of the guaranty are as follows:

"In consideration of One Dollar and other good and valuable consideration to the undersigned in hand paid by PAN-AM SOUTHERN CORPORATION with officers at 944 St. Charles Ave., New Orleans, La., the receipt of which is hereby acknowledged, and for the further consideration that the said PAN-AM SOUTHERN CORPORATION sell and deliver merchandise and other property to Mr. W. R. Johnson of Durant, Mississippi (hereinafter called 'Principal Debtor') on such credit terms as said PAN-AM SOUTHERN CORPORATION from time to time may grant said Principal Debtor, the undersigned guarantees (or, if more than one, jointly and severally guarantee) absolutely and unconditionally to PAN-AM SOUTHERN CORPORATION and its successors and assigns (herein called the 'Obligee'), the prompt payment of any and all sums of money and unpaid and/or *which may hereafter be unpaid by the Principal Debtor to the Obligee* up to ------------------------------- any amount ------------------------------ ($ any amt.) for merchandise and other property heretofore or hereafter sold and delivered by the Obligee to the Principal Debtor, or upon any other indebtedness legally created by the Principal Debtor in favor of the Obligee, whether or not the indebtedness for such merchandise or other property, or such other indebtedness, is evidenced by note, trade acceptance or open book account, without necessity of recourse to the Principal Debtor or to any security given by the Principal Debtor, this being a primary obligation. The undersigned agrees to pay all court costs and disbursements of collection, including reasonable attorneys' fees; and also agrees that the book entries of the Obligee shall be accepted as conclusive proof of delivery by the Obligee of such merchandise and other property to the Principal Debtor

and/or of all amounts unpaid by the Principal Debtor. (Emphasis ours.)

" . . . .

"This instrument shall be considered as a general and continuing guaranty and shall not be revoked by the death of the undersigned, but shall remain in full force and effect until the receipt from the undersigned or his executor, administrator or other legal representative of a notice in writing sent by registered mail to PAN-AM SOUTHERN CORPORATION at his above address, terminating the same, but no such notice of termination shall release the undersigned from liability for any merchandise or other property sold and delivered to the Principal Debtor, or for any other indebtedness legally created by the Principal Debtor in favor of the Obligee prior to the receipt by the Obligee of such notice."

This guaranty was signed, sealed and delivered on March 13, 1952, by the deceased, W. E. Wigley, witnessed by two individuals, and accepted by the Pan-Am Southern Corporation on April 9, 1952, acting through its Credit Manager, G. Pearson.

The American Oil Company, successor or assignee, is in the same contractual position as was the Pan-Am Southern Corporation.

The final decree of the chancellor, after reciting the pertinent parts of the stipulation between the parties to this suit, held (a) that the attempted probate of the appellant's account failed to comply with the requirements of the Mississippi Code Annotated section 568 (1956), in that first, neither the original guaranty agreement signed by the deceased, W. E. Wigley, nor a certified copy thereof, was filed with the clerk; (b) the requisite affidavit of probation was not executed by an officer of the appellant corporation, but by an agent. The court further held that the efforts on the part of appellant to probate the account were insuffici-

ent and void and amounted to no probate at all; that after the expiration of the time in which accounts might be probated against this estate, the effort made by the appellant creditor to amend, as prayed for in its cross petition, could not be permitted; and (c) that the claim of the American Oil Company is not a probatable claim for the reason that W. E. Wigley, on the 13th day of March, 1952, executed a guaranty to Pan-Am Southern Corporation (predecessor of the American Oil Company) obligating himself to make prompt payment of any amount due by W. R. Johnson, which merchandise sold and delivered by Pan-Am Southern Corporation to W. R. Johnson, who is the principal debtor and who is primarily liable to the American Oil Company; and the Court finds that it was, thus imposed on W. E. Wigley, as grantor, a contingent liability which is secondary to the liability of W. R. Johnson, which liability of the guarantor would become absolute upon the refusal of liability of the principal debtor to pay his obligation; further, the Court finds that there is nothing in the record to indicate default by the principal debtor and the liability, if any, against the guarantor is not fixed so as to permit the American Oil Company to probate the same as a claim against the Estate of W. E. Wigley.

Neither the appellant nor the appellee in their briefs consider or treat these findings by the chancellor. It is unnecessary for this Court to consider and pass upon these holdings by the learned chancellor, and this Court expressly does not do so, for the reason that this case can be decided upon the other issues, which are treated at length in the excellent briefs of both parties. This relates to the fourth finding of the chancery court, which was ''that the contract of indemnity, or guaranty, signed by W. E. Wigley, was revoked on notice to the American Oil Company, and that as to sales made to the principal indebtor (debtor) subsequent to said notice and revocation of the guaranty that the estate of

W. E. Wigley is not liable.'' Therefore, the chancellor sustained the objection filed by the executrix to the probation of the account of the appellant and held that the effort to probate the account by the American Oil Company was void and ineffective.

Three assignments of error were filed by the appellant, which are as follows:

1. The Court erred when it held that the contract of indemnity, or guaranty, signed by W. E. Wigley was revoked on notice to The American Oil Company and the Court erred when it held that as to sales made to the principal debtor subsequent to said notice and revocation of the guaranty that the Estate of W. E. Wigley was not liable.

2. The Court erred when it held that notice of the death of W. E. Wigley terminated or revoked the guaranty signed by W. E. Wigley on March 13, 1952.

3. The Court erred when it denied The American Oil Company the right to file suit, at some future date, to recover from the Estate of W. E. Wigley the cost of merchandise sold to W. R. Johnson, the original debtor.

The appellant in its brief assigns two points for consideration:

Point 1: The same rules of construction apply in ascertaining the meaning of the language of the contract of guaranty as apply in ascertaining the meaning of language in other contracts.

Point 2: The death of the guarantor and notice thereof to the obligee did not terminate the contract of guaranty for the reason that said contract specifically provided to the contrary and the estate of the guarantor is liable for the goods sold the principal debtor after death of guarantor.

It is to be observed that the appellant in the second point combines assignment number one with assignment number two, and both are considered in our review of

assignment number two. Assignment of error number three is not considered by the appellant at all in its brief, and does not have to be determined by this Court, for reasons which will subsequently appear. The appellee interposes no objection to Point 1 urged by the appellant but concedes its general application, with which we agree.

It is to the combined first and second errors assigned and to Point 2 of appellant's brief that our attention is directed. The fundamental question presented for review here is therefore whether or not the death of W. E. Wigley, guarantor, and the notice to the obligee-appellant of the death of W. E. Wigley, terminated or revoked the guaranty assigned by guarantor, W. E. Wigley.

Appellant urges that the death of the guarantor and notice thereof to the obligee did not terminate the contract of guaranty for the reason that said contract specifically provided to the contrary, and the estate of the guarantor is liable for the goods sold to the principal debtor after the death of the guarantor. Certain agreed facts, enumerated in the stipulation, should be remembered in reaching a solution to the basic question: Did the death of the guarantor and notice thereof to the obligee terminate the contract of guaranty? These facts are: (1) The obligee concedes it had actual notice of the guarantor's death. (2) All of the indebtedness was incurred after the obligee had notice of the death of the guarantor, W. E. Wigley. (3) No suit was filed against the principal debtor, W. R. Johnson, by the obligee, to force payment of the $21,759.94 alleged to be due and payable.

The record discloses that the contract of guaranty had been operating from March 13, 1952 to March 31, 1963, the date of guarantor's death, a period of eleven years; that from the date of guarantor's death, and from the date of the publication of the first notice to

creditors, the obligee continued to make sales to the principal debtor, W. R. Johnson, without notifying the testatrix of guarantor's estate of its guaranty contract, and the obligee continued to do so up to thirteen days before the expiration of the six months' period for the probation of claims. The record does not disclose that any demand has been made upon the principal debtor, or that the executrix had any knowledge of the guaranty.

■■ ■ While, under the facts in the case at bar, no case has been found exactly in point, there are cases which are factually analogous and the rules of law stated therein are controlling here. As a general proposition the presumption is that every person who makes a contract intends to bind his executors and administrators, unless there are express statements to the contrary. Chamberlain v. Dunlop, 126 N. Y. 45, 26 N.E. 966, 22 Am. St. Rep. 807 (1891); Kernochan v. Murray, 111 N.Y. 306, 18 N.E. 868, 2 L.R.A. 183, 7 Am. St. Rep. 744 (1888).

■■ ■ It is the intention of the contracting parties, or the extent of the guarantor's undertaking, which must be determined. By the customary rules of construction, "from the instrument itself in which it is clearly expressed, or from the instrument and the surrounding circumstances," after the intention of the parties or the scope of the instrument has been determined, "the guarantor is entitled to have his undertaking . . . strictly construed and that it cannot be extended by construction or implication beyond the precise terms of his contract; and in this respect a guarantor is said to be, like a surety, a favorite of the law." 28 C. J. 935-36 (1922).

There is confusion in the cases dealing with the subject of guaranty, and guaranties generally fall within two broad classes, first, where the consideration is entire, that is, where it passes wholly at one time, and second, where it passes at different times and is therefore separable or divisible. 24 Am. Jur. *Guaranty* sec. 66 (1939).

■■ The law is well settled that where the consideration is entire, the guaranty is not revocable by the guarantor, and is not terminated by his death and notice of his death. In re Lorch's Estate, 284 Pa. 500, 131 Atl. 381, 42 A.L.R. 922 (1925).

■■ In the latter case, however, where the consideration passes at different times and the contract of guaranty is divisible, this latter class of guaranties on the contrary may be revoked as to subsequent transactions by the guarantor upon notice to that effect and are terminated by his death and notice of that event. 24 Am. Jur. *Guaranty* sec. 66 (1939).

In Restatement, Security section 87 (1941) it is stated: "Where an offer to be bound as a surety is revocable it is revoked by the death of the offeror. . . . c . . . The fact that the offer provides that death shall not terminate the offer is immaterial. To bind the estate of the surety, the contract must be made before his death." In explanation of this rule of law, the following illustration was given: "S, a director of a bank, offers to guarantee the payment of all advances to his bank by the Reconstruction Finance Corporation, up to $100,-000 outstanding at any one time. He also stipulates that the offer is not to be revoked except after receipt of written registered notice by the Treasurer of the Corporation. The Corporation lends $50,000 to the bank before S dies, and $50,000 after his death, without knowledge of his death. No repayments have been made. S's personal representative is liable for $50,000 only." This same rule is recognized in Restatement, Contracts section 48 (1933), but no Mississippi case directly in point is cited. In 38 Corpus Juris Secundum *Guaranty* section 37 (1943), we find this language: "A revocable guaranty is terminated by the death of the guarantor. The authorities are in conflict as to whether notice of the guarantor's death must be given.

"Where the guaranty is one which could be ended at the will of the guarantor while living, . . . it will be

terminated as to future transactions by his death and notice thereof, but such termination will not affect transactions which were executed prior to such death. (Numerous cases are cited.) Thus the death of the guarantor terminates a general guaranty of payment by another of a liability to be created in the future. (Buckeye Cotton Oil Co. v. Amrhein, 168 La. 139, 121 So. 602 (1929); and American Chain Co. v. Arrow Grip Mfg. Co., 235 N.Y.S. 228, 134 Misc. Rep. 321 (1929)). . . . Where the guaranty is terminable at the will of the guarantor, it has been held that the mere fact that the agreement provides that death shall not terminate the liability of the guarantor is immaterial.'' (Citing American Chain Co., *supra.*)

The guaranty in the case at bar expressly stipulates that it shall be considered as a general and continuing guaranty. This stipulation, together with the considerations recited in the guaranty, establish the fact that this is not a contract where the consideration passed at one time. The consideration is not entire and it is obvious also that the consideration in the contract at bar passed at different times and therefore it is separable or divisible. Thus the mere signing and executing of the guaranty contract by Mr. Wigley did not per se create a debt. If no merchandise had ever been sold in reliance upon the contract, the guarantor would never have been indebted to American Oil Company. Assuming that the mere sale of goods would automatically make the guarantor indebted, irrespective of what the principal debtor did, we can assume, in deciding this case, that liability would accrue against the guarantor as to each purchase of merchandise when it was made during the lifetime of the guarantor. The authorities are not in complete accord insofar as whether or not the death of a guarantor terminates the liability under divisible contract of indemnity. In Lorch's Estate, *supra,* it is pointed out: ''The decease of the guarantor in a di-

visible contract of indemnity revokes the obligation as to advances thereafter made, . . .'' In a case of a continuing guaranty, each advance made by the guarantor constitutes a fresh consideration and, when made, is an irrevocable promise on the part of the living guarantor.

In *American Chain Company* it is pointed out that there is also a divergence of opinion as to whether or not the fact of death must be made known to the one advancing credit before liability terminates. This question is not for consideration in the case at bar for the simple reason that the obligee admits that it had notice of the death of the guarantor. Among those states requiring that actual or constructive notice must be shown to have been given in order to relieve liability, the following cases can be found: Valentine v. Donohoe-Kelly Banking Co., 133 Cal. 191, 65 Pac. 381 (1901); Gay v. Ward, 67 Conn. 147, 34 Atl. 1025, 32 L.R.A. 818 (1895); Bedford v. Kelley, 173 Mich. 492, 139 N.W. 250 (1913); National Eagle Bank v. Hunt, 16 R.I. 148, 13 Atl. 115 (1888); and Exchange Nat'l Bank v. Hunt, 75 Wash. 513, 135 Pac. 224 (1913).

To the contrary, in other jurisdictions it is decided that death ipso facto ends the relationship as of the date thereof. Pratt v. Trustees of Baptist Soc'y of Elgin, 93 Ill. 475, 34 Am. Rep. 187 (1879); Aitken v. Lang, 106 Ky. 652, 51 S.W. 154, 90 Am. St. Rep. 263 (1899); Hyland v. Habich, 150 Mass. 112, 22 N.E. 765, 6 L.R.A. 383 (1889); Jordan v. Dobbins, 122 Mass. 168, 23 Am. Rep. 305 (1877); and Michigan State Bank v. Estate of Leavenworth, 28 Vt. 209 (1855).

In *Lorch's,* where the facts are similar to the facts in the case at bar, the law of Pennsylvania required that the administrator of an estate give notice to creditors, which was done. In that case provisions were made in the instrument for its termination by giving written notice to that effect. The guarantor in that case died and the plaintiff claimed that it had no previous know-

ledge of his death. The Pennsylvania court held that the death of Louis Lorch terminated his contract of guaranty as to the sales made after his death, and that since the obligee had constructive notice of his death by the publication of notice to creditors, that was sufficient. The Lorch case is a much weaker case than the case at bar for the reason that actual as well as constructive notice was given to the appellant here.

In Buckeye Cotton Oil Company v. Amrhein, 168 La. 139, 121 So. 602, 604 (1929), the Court said: "And it is also quite true that a continuing guaranty expires at the death of the guarantor, unless the party guaranteed had no notice of the death." That case cited Menard v. Scudder, 7 La. Ann. 385, 56 Am. Dec. 610 (1852); 12 R.C.L. *Guaranty* sec. 39. Also, in the case of Teplitz Thrown Silk Co. v. Rich, 13 N.J. Misc. 494, 179 Atl. 305, 306 (1935), the Court said, "where the guaranty could have been revoked by the guarantor during his lifetime, it terminates by his death as to future obligations" and holds this rule to be the better one. In Annotation, 81 A.L.R. 798 (1932) may be found citations of English cases substantiating this rule of law.

The courts in other states have passed upon questions either analogous with the one at bar or closely allied thereto which have been cited as authorities, but perhaps the best case which bears upon the question at bar is the case of American Chain Company v. Arrow Grip Manufacturing Company, *supra. American Chain Company* is not materially distinguishable on its facts from the case at bar. In that case the instrument was not under seal and it recited a nominal consideration of one dollar. The guaranty was a continuing one and it was provided that the agreement should be enforceable against the respective administrators of the guarantors, and that the death of the guarantor should not terminate the liability of the guarantor except by the giving of notice of termination of the agreement by the represen-

tatives of the deceased's guarantors. In *American Chain Company* the estates of the guarantors had been fully administered, and distribution of the assets had been made to those entitled thereto. All the decedents had died long prior to the ordering or delivering of any merchandise for the purchase of which the action was brought. The representatives of the respective testators had no knowledge of the existence of the plaintiff's claim until approximately four years subsequent to the death of the guarantor. The plaintiff's claim was never filed with legal representatives of these estates and the evidence failed to show that the plaintiff required actual knowledge of the deaths of these guarantors until shortly prior to the institution of the suit. No notice was ever served on plaintiff or its officers terminating liability under the guaranty until approximately five years subsequent to the death of the guarantors. The goods involved in the sale were furnished to the defendant company four or five years subsequent to the death of the guarantors. It is obvious, therefore, that the case at bar presents a much stronger case in behalf of the appellee than did the American Chain Company case in behalf of the guarantors or their estates.

While there is authority to the contrary, the rule that death terminates the separable or divisible contract appears to have more support. The case of Jordan v. Dobbins, 122 Mass. 168, 23 Am. Rep. 305 (1877), is a good illustration. The guaranty contract in that case cited a present consideration of "value received, the receipt whereof is hereby acknowledged," which is true in the case at bar. In the Jordan case it was under seal. It was also revocable only by written notice to the guarantee, and was to extend for an indefinite period of time. The Court held in that case, however, that the guaranty was "not founded upon any present consideration passing to the guarantor," and stated: "The fact that the instrument is under seal cannot change its nature

or construction. No liability existed under it against the guarantor at the time of his death, but the goods for which the plaintiffs seek to recover were all sold afterwards.'' 122 Mass. at 171. The Court went on to say: ''Such being the nature of a guaranty, we are of opinion that the death of the guarantor operates as a revocation of it, and that the person holding it cannot recover against his executor or administrator for goods sold after the death. Death terminates the power of the deceased to act, and revokes any authority or license he may have given, if it has not been executed or acted upon. His estate is held upon any contract upon which a liability exists at the time of his death, although it may depend upon future contingencies. But it is not held for a liability which is created after his death, by the exercise of a power or authority which he might at any time revoke.'' 122 Mass. at 170-71.

In Restatement, Security section 87 (1941) it is stated: ''Where an offer to be bound as a surety is revocable it is revoked by the death of the offeror.'' The comment here states further: ''b. The rule stated in this Section applies only where a surety's offer is revocable. . . .

''Some of the situations to which the rule does not apply are those where the surety's promise is under seal or where the surety has received consideration which makes his promise binding prior to his death, although something remains to be done by the creditor as a condition of the surety's duty of performance. . . .''

██ █ As pointed out in American Chain Company, if the guaranty be one which the guarantor himself could have determined by notice, then his death will operate as a revocation. Valentine v. Donohoe-Kelly Banking Co., 133 Cal. 191, 65 Pac. 381 (1901); Hyland v. Habich, 150 Mass. 112, 22 N.E. 765, 6 L.R.A. 383 (1889); Jordan v. Dobbins, 122 Mass. 168, 23 Am. Rep. 305 (1877); Menard v. Scudder, 7 La. Ann. 385, 56 Am. Dec. 610

(1852); Coulthart v. Clementson, L.R. 5 Q.B. Div. 42 (1879); Harriss v. Fawcett, L.R. 8 Ch. App. 866 (1873); and Offord v. Davies, 12 C.B. (N.S.) 748, 756, 757 (1862).

If, on the other hand, the guarantor could not have put an end to the guaranty by notice, then his death does not revoke the instrument, nor does it extinguish his liability thereunder. Moore v. Wallis, 18 Ala. 458, 463 (1850); The Royal Ins. Co. v. Davies, 40 Iowa 469, 20 Am. Rep. 581 (1875); Green v. Young, 8 Greenl. 14, 22 Am. Dec. 218 (Me. 1831); Lloyd's v. Harper, 16 L.R. Ch. Div. 290, 319 (1880); and Calvert v. Gordon, 3 Man. & Ry., 124, 128 (1828).

It is apparent that the cases which hold that the continuing guaranty terminates on the death of the guarantor do so on the theory that the guarantor has made merely a bare offer which is supported by consideration (that is, accepted) only when the contemplated credit is extended. This is the usual situation and if the offer is unsupported by consideration, it should terminate at the death of the offeror and cannot be accepted after his death. The ultimate question which arises before us is: Was the undertaking in the guaranty, that this instrument will not be revoked by the death of the undersigned, but shall remain in full force and effect until notice in writing terminating the same has been given, supported by any consideration? That turns also upon the question of whether or not one dollar and other good and valuable consideration was sufficient to support the promise and thus form a binding option contract. We feel that the rule laid down by the New York court in the American Chain Company case represents a sounder and more equitable interpretation of the scope of the guaranty. In the New York case we find this language, "that the guarantors' promise was in effect a continuing offer or series of offers which were to be successively accepted as each credit of the contemplated series was given. The continuance of an offer

is in the nature of its constant repetition, which necessarily requires some one capable of making a repetition. Pratt, Adm'x, v. Trustees etc., supra. A dead guarantor can make no promise, nor can it be held that the guarantor made the advance at the request of a dead man. Valentine v. Donohoe-Kelly Banking Co., supra." 235 N.Y.S. at 235.

In the case at bar the offer of the guarantor could have been withdrawn by him at any time as to future sales, and just as the New York court held in the American Chain Company case, so do we hold, that "it logically follows that if the guarantors could have withdrawn their offer with respect to such sales, their death operated as a withdrawal and no liability can be asserted against their estates on sales made after their decease." The New York court went further and held: "The mere fact that the agreement here provides that death shall not terminate the liability of a guarantor is immaterial. The law decrees otherwise. In a contract of sale there must be two minds, at least, concurring at the moment of its completion; but this cannot be if there be but one contracting party in existence. Mactier's Adm'rs v. Frith, 6 Wend. 103, 21 Am. Dec. 262." 235 N.Y.S. at 235.

The purpose of giving the notice to the obligees was fulfilled in the case at bar, the purpose being to permit the obligees to have the opportunity to determine whether or not upon the guarantor's death they will continue to furnish merchandise to the principal debtor. It can scarcely be urged by the obligees that the purpose of the notice in the guaranty contract was not fulfilled or realized, and as was stated in Jordan v. Dobbins, *supra*: "It is no hardship to require traders, whose business it is to deal in goods, to exercise diligence so far as to ascertain whether a person upon whose credit they are selling is living." 122 Mass. at 171. As in the American Chain Company case, this case is one which does not appeal to the sympathy or the conscience of

the court. Appellants here knew of the death of the guarantor and they elected to operate without notifying his widow, the testatrix of the guarantor's estate, that they had the guaranty or that they were going to proceed thereunder. They sought to bind the estate for almost an additional six months on a continuing contract in which the guarantor could not possibly participate and which we do not believe was the intention of the contracting parties. The notice, actual and constructive, given appellant terminated the operation of the guaranty.

While courts of other jurisdictions may, and various schools of law probably will, take issue with our holding, nevertheless the New York rule appeals to us as being a sounder, better and more equitable interpretation of this preplexing question, and the case is therefore affirmed.

Affirmed.

*Lee, C. J., Gillespie, Rodgers and Jones, JJ.,* concur.