**B–W ACCEPTANCE CORPORATION,**
**Plaintiff-Appellant,**
v.
**Jesse E. PORTER and E. L. King,**
**Defendants-Appellees.**

No. 76–1863.

United States Court of Appeals,
Fifth Circuit.

March 6, 1978.

Brad Sessums, Jackson, Miss., for plaintiff-appellant.

Earl Keyes, Jackson, Miss., for Porter.

E. L. King, pro se.

Before COLEMAN and FAY, Circuit Judges, and KING, District Judge.*

PER CURIAM:

B–W Acceptance Corporation (B–W) instituted a diversity action against Jesse E. Porter and E. L. King on a guaranty agreement executed by Porter and King in favor of B–W. This cause was tried before a jury in federal district court in Mississippi. B–W alleged outstanding obligations by Porter and King of $31,864.80 plus an attorney's fee of fifteen percent (15%).[1] Following a trial on the merits the jury returned a verdict in favor of B–W against Porter and King in the amount of $1,074.73 plus a fifteen percent attorney's fee. Motion by B–W to amend judgment or for a new trial was denied. B–W appeals alleging error by the trial court in refusing to give two of their requested instructions to the jury, in giving contradictory instructions to the jury, and in permitting Porter to elicit from King alleged former testimony of Jerry Smith, a branch manager of B–W. B–W also contends that the amount of damages awarded was contrary to the evidence and the law and that the trial court should have either amended the judgment or granted a new trial. We find no merit in B–W's contentions and affirm the judgment of the district court.

## FACTS

In early 1960, Porter and King entered into the appliance business in Jackson, Mississippi. They incorporated the Jackson Maytag Company with Porter and King each being fifty percent shareholders, officers and directors. Their place of business was located at 426 North State Street. In December, 1965, the name of the corporation was changed to King-Porter Company, Inc. but the location of the business remained the same.

In 1966, King contacted B–W to seek wholesale and retail financing for the King-Porter business. In order to induce B–W to finance their business, King and Porter executed a guaranty agreement on June 13, 1966, in favor of B–W for the maximum amount of $75,000, which guaranteed performance and payment of *King-Porter Company, Inc.'s* obligations to B–W.

---

* District Judge of the Southern District of Florida, sitting by designation.

1. The attorney's fee was provided for in the guaranty agreement in the event it was necessary to refer a claim to an attorney. (App. p. 12)

On April 5, 1968, King and Porter formed two more corporations under Mississippi law, each of which operated a retail appliance store. One corporation was King-Porter, Inc. which operated the store in Candlestick Park, Jackson, Mississippi. The other corporation was King-Porter Service Company, Inc. which operated its store on Silas Brown Street in Jackson. On February 13, 1969, a fourth corporation, King-Porter, Corp., was formed and located its store on Jackson Square, Jackson, Mississippi. King-Porter Company, Inc., King-Porter, Inc., and King-Porter, Corp. were retail appliance stores and King-Porter Service Company operated a commercial washer-dryer and parts store.

Three of the four corporations listed 426 North State Street as their initial registered offices although only one, King-Porter Company, Inc., actually conducted business at that location. King and Porter were each fifty percent shareholders, in three of the four corporations; another party, Mr. Tymes owned a one-third interest in King-Porter Service Company, Inc.

At the time the financing and the guaranty agreements were executed, B–W set up two lines of credit for "King-Porter Appliances", one for wholesale financing and one for retail financing. This setup remained the same through the spring of 1969 shortly after which the four King-Porter corporations were adjudged bankrupt. The procedure followed by the King-Porter stores, when they wished to order merchandise to put in the stores, began with a call to an appliance distributor, in this case either McKee-McRae or Kelvinator. The distributor then contacted the B–W office in Jackson, Mississippi for credit approval. During 1968 and 1969, the King-Porter account and credit approval were handled by B–W's local manager, Jerry Smith. Upon gaining credit approval, the distributor would then prepare an invoice and send it to B–W. B–W would then prepare a "trust receipt" which listed the merchandise and its cost, as invoiced by the distributor, and send the trust receipt to King-Porter at the North State Street store. B–W would then pay the distributor for the merchandise.

Between October 29, 1968 and March 25, 1969, seventeen trust receipts were issued for merchandise purchased by the King-Porter operations. Sixteen of the trust receipts were for merchandise from McKee-McRae and one was for merchandise from Kelvinator. The trust receipts for McKee-McRae's merchandise were made out to "King-Porter Appliances" and the one for Kelvinator's merchandise was made out to King-Porter Company, Inc. At the time of trial, the sixteen trust receipts representing McKee-McRae's merchandise represented remaining obligations totalling $30,790.07 and the one for Kelvinator showed a balance at $1,074.73.[2]

In a case similar to the one at bar involving the same defendants, this Court set forth the Mississippi law on guaranty agreements. It stated:

[A] guarantor is entitled to have his undertaking strictly construed, and the contract cannot be extended beyond its precise terms. *American Oil Company v. Wigley's Estate,* 251 Miss. 275, 169 So.2d 454 (1964). The person claiming under the guaranty has the burden of showing that the debt whose recovery is sought falls within the contractual terms and that all conditions upon the guarantor's liability have occurred. However, the subjective beliefs and intentions of the parties are relevant to the extent necessary to interpret ambiguities in the written document; and to this end, matters extrinsic to the writing may properly be considered by the trier of the facts.

*EAC Credit Corporation v. King,* 507 F.2d 1232, 1236 (5th Cir. 1975).

---

**2.** In the spring of 1969, the King-Porter organization began to experience financial difficulty. As a result, B–W picked up merchandise it financed for King-Porter in order to protect its security interests. After repurchase of some of the merchandise by McKee-McRae and Kelvinator, and after a public sale of the remainder of the merchandise, the amount still due totalled $30,790.07 for merchandise purchased from McKee-McRae and $1,074.73 for merchandise from Kelvinator.

B–W's first assignment of error is the trial court's refusal to give two of its requested instructions. Those instructions were:

*Instruction No. 1 for the Plaintiff*

You are directed to return a verdict for the plaintiff against the defendants, Jesse E. Porter and E. L. King, jointly and severally, in the amount of $31,-864.80, plus fifteen percent attorney's fees thereon, or a total verdict of $36,-634.52.

*Instruction No. 9 for the Plaintiff* .

Separate corporations are to be treated as separate entities in the absence of circumstances justifying disregard of the corporate entity. However, the notion of separate, corporate existence of affiliated corporations will not be recognized where one corporation is so organized and controlled and its business conducted in such a manner as to make it merely an agency or instrumentality of another corporation, particularly where the rights of third parties dealing with those corporations are concerned.

In the case before you, King-Porter, Inc., King-Porter Service Company, Inc., and King-Porter Corp. were affiliated corporations of King-Porter Company, Inc. All business was transacted by, and credit extended to, King-Porter Company, Inc., and the other affiliated corporations had, under the law, no real existence whatsoever. You are instructed, therefore, that the debt owed to the plaintiff, B–W Acceptance Corporation, on the date of the bankruptcy of the four corporations, was the debt of King-Porter Company, Inc.

Instruction No. 1 is of course a peremptory instruction directing the jury to return a verdict for B–W against Porter and King for the entire amount claimed. Under the above stated law of Mississippi it was necessary for the jury to determine whether the guaranty agreement was meant to include coverage of trust receipts that were not in the name of King-Porter Company, Inc. Of course, to make that determination the jury had to be instructed on the law regarding corporations. The instruction [3] the trial court gave is almost verbatim that of plaintiff's requested instruction No. 9 until the last two sentences. In those two sentences B–W again asks the court to take the determination of whether or not these corporations were separate entities away from the jury.

In a diversity case, the quantum of evidence required to withstand a motion for directed verdict or an instructed verdict is determined by federal law. *Transammonia Export Corp. v. Conserv., Inc.,* 554 F.2d 719, 723 n.7 (5th Cir. 1977). In *Transammonia,* the Court quotes *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir. 1969) *en banc,* in which this Court stated that the quantum of evidence required. "[I]f there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions . . ." then the question should be submitted to the jury. *Boeing,* 411 F.2d at 368. After reviewing the record, we find the trial court properly submitted these factual conflicts to the jury for resolution.

---

**3.** The instruction as stated by the court read:

Separate corporations are to be treated as separate entities in the absence of circumstances justifying disregard of the corporate entity. However, the notion of separate, corporate existence, apparent and subsidiary or affiliated corporations will not be recognized where some corporation is so organized and controlled and its business conducted in such a manner as to make it merely an agency or instrumentality of another corporation. This is particularly true in cases where the rights of third parties dealing with those corporations are concerned.

In the case before you, King-Porter, Inc., King-Porter Service Company, Inc., and King-Porter Corporation were affiliated corporations of King-Porter Company, Inc. If you should find from a preponderance of the evidence that all business was transacted by, and credit extended to, King-Porter Company, Inc., by B–W Acceptance Corporation, and the other affiliated corporations had therefore no real existence whatsoever, then you are instructed that the debt owed to the plaintiff, B–W Acceptance Corporation on the date of the bankruptcy of the four corporations, was the debt of King-Porter Company, Inc.

█ B–W next contends the trial court erred in permitting Porter's counsel at this trial to elicit from King the testimony made at a prior trial by Jerry Smith, branch manager of B–W, which showed B–W's knowledge of the existence of four corporations at the time the trust receipts were prepared.[4] B–W bases this allegation upon Fed.R.Evid. 804(b)(1),[5] which governs the admission of former testimony, because defendant Porter failed to show at trial Jerry Smith's unavailability to testify. We find, however, that although this is former testimony, it is also an admission by a party under Fed.R.Evid. 801(d)(2)(C).[6] See also *Kingsley v. Baker/Beech-Nut Corp.,* 546 F.2d 1136, 1141 (5th Cir. 1977). Under this rule it is not necessary to show unavailability. Jerry Smith was B–W's branch manager and testified at the previous trial concerning his duties with respect to the King-Porter account. He was authorized by B–W to testify to what he knew[7] and, therefore, King's repetition of Smith's testimony was admissible under Rule 801(d)(2)(C).

█ B–W next contends that the court gave contradictory instructions to the jury. The trial court first gave B–W's requested instruction No. 2 which instructed the jury to return a verdict for B–W for the amount owing from King-Porter Company, Inc. under the proof. King-Porter Company, Inc. was the name on the guarantee agreement. There was no dispute that obligations represented by trust receipts in the name of King-Porter Company, Inc. were due and owing. Therefore, a directed verdict on that point was proper. The alleged contradictory instruction reads as follows:

You are instructed as a matter of law that the guaranty agreement which was on a printed form prepared by and for the plaintiff should be strictly and literally construed and applied, but if you believe from a preponderance of the evidence that E. L. King and Jessee E. Porter did not ultimately intend to guarantee, or be bound to pay any obligations other than those obligations of King-Porter Company, Inc., then you should find for the plaintiff only for those obligations, or debts incurred by the corporation known as King-Porter Co., (sic) Inc. and not those obligations of any other corporation or business, unless such other businesses were mere trade names used by King-Porter, Company, Inc. in thus purchasing such merchandise.

Again, as discussed in the first issue this instruction presented to the jury for its determination a question of fact; that is, whether the remaining trust receipts made out in the name of King-Porter Appliances were ever intended to be covered by this guarantee agreement. The jury decided

---

4. This testimony was important in the case because it estopped B–W from denying its knowledge of the existence of the four corporations.

5. Rule 804
    (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
    (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil case action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

6. Rule 801
    (d) Statements which are not hearsay. A statement is not hearsay if—

(2) Admission by party-opponent. The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

7. Although the record in this case does not include a transcript from the prior trial in Arkansas, B–W's counsel admitted at oral argument Jerry Smith was authorized by B–W to testify at that time. Counsel also agreed all parties had a transcript of this testimony at the trial of this case.

those trust receipts were not covered by denying B–W recovery upon them.

 B–W's suggestion that its requested instruction No. 6 was contradictory to the verdict form given to the jury merits little discussion. The jury returned a verdict against both defendants, Porter and King, in the amount of the trust receipt made out with the name of King-Porter Company, Inc. Although the form of the verdict might have lead the jury to believe it could hold against one defendant and not the other, the actual verdict followed the court's instruction on joint and several liability precisely.

The jury awarded B–W $1,074.73 plus 15% attorney's fee which was the exact amount owed on the trust receipt in the name of King-Porter Company, Inc., and the exact amount of attorney's fees provided for in the guarantee agreement. B–W suggests the jury made a compromise verdict because it was confused by the jury instructions. We find on the basis of the evidence and the law which was accurately presented to the jury by the court, that the jury clearly understood both and, without confusion, applied them in reaching its verdict.

B–W's last contention that the trial court erred in overruling both plaintiff's motion to alter or amend the judgment and its motion for a new trial is totally without merit.

For the above stated reasons, we affirm the judgment of the district court.