## CIRCUIT COURT OF FAIRFAX COUNTY

In re Estate of
William C. Frogale

June 6, 1997

Case No. (Fiduciary) 54830

BY JUDGE F. BRUCE BACH

This matter is before the Court on the claimant West Virginia Moulding & Millwork's ("WVMM") and the claimant Allied International, Inc.'s ("Allied") Exceptions to the Commissioner's Report. After careful review of counsel's arguments and the evidence presented, the Commissioner's Report is sustained.

### I. *Background*

The record discloses that a stipulation of facts was agreed upon between the claimants and the Estate which succinctly gives the essential facts upon which the Exceptions are now predicated. The following reflects the pertinent portions of the parties' stipulation of facts. On April 3, 1991, William Frogale executed a Personal Guaranty in favor of Allied for any obligation of Annandale Millwork Corporation ("Millwork"). Frogale executed a substantially similar Personal Guaranty in favor of WVMM on May 28, 1993. The guaranties were binding and enforceable upon Frogale. Frogale died on January 1, 1995. Prior to and after Frogale's death, both Allied and WVMM sold lumber and supplies to Millwork on a credit basis. The Estate of William Frogale ("Estate") is presently the sole stockholder of Millwork. Millwork has filed for bankruptcy in the Eastern District of Virginia and is currently indebted to Allied in the amount of $16,078.06 plus interest in the amount of $10,538.20 and indebted to WVMM in the amount of $95,033.19.

At the Estate's request, Jessie B. Wilson, acting as the Commissioner, held a hearing to receive proof of debts and demands against the Estate. On January 14, 1997, the Commissioner filed a report for the Estate of William C. Frogale. In finding the guarantees were revoked upon Frogale's death, the Commissioner denied the claims of Allied and WVMM. Both claimants, Allied and WVMM, properly filed their exceptions to the Commissioner's report.

The issue before this Court is whether an irrevocable guaranty, which could not be terminated during Frogale's life, is revoked by operation of law upon Frogale's death. This issue is a matter of first impression in Virginia. Other jurisdictions have found that revocable guaranties terminate upon the death of the guarantor; however, it appears that no court has considered the effect of the guarantor's death on an irrevocable guaranty.

## II. *Standard of Review*

A Commissioner's report is sustained unless the Judge concludes that the findings are not supported by the evidence. This rule is inapplicable to conclusions of law contained in the Commissioner's report. *Hill v. Hill*, 227 Va. 569, 318 S.E.2d 292 (1984). In this case, the parties stipulated to the facts before the Commissioner, and his decision is purely a conclusion of law. Therefore, in the instant case, I am deciding the legal issues *de novo*. Since the facts and legal arguments are essentially the same for both claimants, a single analysis follows and is directed to both claimants.

## III. *The Guaranties Were Revoked by Operation of Law*

Guaranties generally fall within two broad classes, those where consideration is entire and those where consideration is continual. It is well established that where consideration is entire, the guaranty is irrevocable and is not terminated by the guarantor's death. *In re Lorch's Estate*, 284 Pa. 500, 131 Atl. 381, 42 A.L.R. 933 (1925). On the other hand, where consideration passes at different times and the contract is divisible, the guaranty may be revoked as to subsequent transactions by the guarantor's death and notice of that event. The factual distinction which causes this case to be unique and one of first impression is that the guaranties, by their terms, are restrictive and "irrevocable" but were executed and performed in a continuing guaranty manner. The Court must determine the threshold issue of whether Frogale provided the total consideration for the guaranty prior to his death or whether

the arrangement consists of a series of independent business transactions and is nothing more than an offer to guarantee future obligations.

A. *Contractual Analysis of the Guaranty*

The contract is considered restricted if it is limited to the guaranty of a single transaction or to a limited number of specific transactions and is not effective as to transactions other than those guaranteed. The guaranty is continuing if it either contemplates a future course of dealing during an indefinite period, if it is intended to cover a series of transactions or a succession of credits, or if its purpose is to give the debtor a succession of credits from time to time.

The general guide in determining whether the guaranty is continuing or restrictive centers on the parties' intention. Such intention is derived by scrutinizing the language of the guaranty with consideration of the parties' situations and the circumstances surrounding the contract's execution. *Loney v. Belcher*, 169 Va. 160, 192 S.E. 891 (1937). The contractor's intention is also resolved by giving effect to the terms of the guaranty. *Berg Metals Corp. v. Wilson*, 170 Cal. App. 2d 559, 339 P.2d 869 (1959); *Wright v. Griffith*, 121 Ind. 478, 23 N.E. 281 (1890).

In situations where a guaranty is capable of being construed as either a limited or a continuing guaranty, the states have employed various methods of construction. *Morgan v. Boyer*, 39 Ohio St. 324 (1883). Some state courts adopt the position that strictly construes the language of the guaranty and will not find a continuing contract unless explicit language is apparent. *Rector v. McCarthy*, 61 Ark. 420, 33 S.W. 633 (1896); *Sherman v. Mulloy*, 174 Mass. 41, 54 N.E. 345 (1957); *Schlem v. Jesaitis*, 37 N.Y.S. 2d 943 (1942); *Electric & Mfg. Co. v. Marshall*, 76 Ohio 289, 146 N.E.2d 643 (1957). Other authorities employ a liberal view in favor of finding continuing guaranties. *Taussig v. Reid*, 145 Ill. 488, 32 N.E. 918 (1893); *Wright v. Griffith*, 121 Ind. 478, 23 N.E. 281 (1890). Some courts apply the general rule of contracts that the language of a guaranty is to be construed most strongly against the party who drafted the instrument. While the states' opinions have proven to be inharmonious, it appears that there is no reason for giving the guaranty any significance which is greater or less than that which "may be fairly said to be the understanding of the parties as in any other contract." *Fannin State Bank v. Grossman*, 30 Ill. App. 2d 484, 487, 175 N.E.2d 268, 270 (1961); *see American Oil Co. v. Estate of Wigley*, 251 Miss. 275, 169 So. 2d 454 (1964) (finding that the same rules of construction apply in ascertaining the meaning

of the language of the contract of the guaranty as apply in ascertaining the meaning of the language in other contracts).

## B. *Interpretation of the Guaranty*

The essentials of the guaranty are as follows:

### *Absolute and Continuing Guaranty*[1]

Whereas … (the "Creditor") has at the request of the Guarantor agreed to supply to Annandale Millwork Corporation (the "Debtor"), whose business address is the same as that of the Guarantor, from time to time in the course of the Debtor's business with goods, products, and materials … on credit; and

Whereas, the Creditor has required, as a condition of this extension of credit to the Debtor, the execution of this Guaranty by the Guarantor, to remain in effect for all such extension of credit to the Debtor.

Now, Therefore, in order to induce the Creditor to extend credit to Debtor from and after the date hereof, the Guarantor agrees with the Creditor as follows:

1. *Guaranty.* The Guarantor hereby and unconditionally and irrevocably guarantees to the Creditor the full and punctual payment of all past, present, and future indebtedness, liabilities, and obligations to the Creditor of the Debtor of any kind, nature, and description whatsoever in connection with any and all extensions of credit given to the Debtor for the purchase of Goods (the "Guaranteed Liabilities") when and as the same shall become due and payable.

2. *Nature of Obligations.* The obligations and liabilities of the Guarantor under this Guaranty are primary obligations of the Guarantor, are continuing, absolute, and unconditional, shall not be subject to any counterclaim, recoupment, set-off, reduction, or defense based upon any claim that the Guarantor may have against the Debtor ….

---

[1] This guaranty is that which was entered into between Frogale and WVMM. The guaranty for Allied contains subtle differences. The pertinent language in Allied's guaranty states, "It is understood that this guaranty shall be a continuing and irrevocable guaranty and indemnity for such indebtedness of the Company."

In examining the contract, full consideration is given to all terms and conditions of the guaranty. *Landa v. Century 21 Simmons & Co.*, 237 Va. 374, 337 S.E.2d 416 (1989). If the guaranty's language is equally susceptible of two or more meanings, it is construed against the party using the ambiguous language. *Old National Bank of Washington v. Seattle Smashers Corp.*, 36 Wash. App. 688, 676 P.2d 1034 (Wash. 1984). The guaranty states it is a continuing and irrevocable guaranty for the company's indebtedness. The claimants urge that this language evidences the parties' intention that the guaranty could not be terminated during Frogale's life and thus was not revoked upon his death. The estate points out that the guaranty is continuing on its face and as applied in the parties' course of dealings. Therefore, the guaranty died with Frogale, and the estate is not responsible for the extensions of credit made after Mr. Frogale's death. I find that the words "continual" and "irrevocable" complement each other and do not per se equate to ambiguity. Nonetheless, the language of the guaranty is not, in itself, determinative of the issue in this case. Therefore, the Court must examine the facts surrounding the parties' business relationship, taking into account their course of dealings and usual business custom.

## C. *The Parties' Business Relationship*

According to the claimants' position, the entire consideration passed at the time of the guaranty and is therefore sufficient consideration to bind the estate at the death of the guarantor.

In support of this position, the claimants rely in part on the Nevada Supreme Court's decision in *Estate of Sawyer v. Ygnacio Medical Center*, 92 Nev. 171, 547 P.2d 317 (Nev. 1976). In *Sawyer*, the decedent guarantor guaranteed a twelve-year lease. Defaults on the lease occurred before and after the death of the guarantor. The court found that the guarantor's estate was liable for the lease defaults which occurred after his death. The claimants also cite a New Jersey Superior Court decision where a creditor bank was permitted to continue to accept renewals on a promissory note after the guarantor's death. *First New Jersey Bank v. F.L.M. Business Machines, Inc.*, 130 N.J. Super. 151, 325 A.2d 843 (1974). Each of these cases illustrates the proposition that where consideration for the guaranty is entire, it is not revocable by the guarantor during his lifetime, nor is it terminated at his death.

On the other hand, the estate argues that the business relationship between the parties is typical of the relationship between a supplier and customer. Effectively, the association comprises a series of separate and independent business transactions between the parties over time. The affiliation is one

where Millwork would contact the claimants and place an order when it needed lumber and supplies. When placing an order, there are three options available to the claimants: (1) refuse to accept the order; (2) accept the order but require that payment be in cash at the time of delivery; or (3) accept the order and make the delivery on credit with payment due in accordance with the terms of the invoice. Upon notice of Frogale's death, each claimant made an affirmative, independent business decision to enter into new and separate business transactions with Millwork. Thus, the guaranty merely represents a continuing offer to enter into a series of contracts supported by separate consideration.

To bind the guarantor's estate, the contract must be made before his death. A contract is not complete until adequate consideration is provided. I find that the necessary consideration for the guaranty was not provided until after Frogale's death. The case of *American Oil Co. v. Estate of Wigley*, 21 Miss. 275, 169 So. 2d 454 (Miss. 1964), is a good illustration of the position that the guaranty was revoked upon the guarantor's death. In *American Oil*, the Mississippi Supreme Court reasoned that the estate was not liable for credit obtained after the guarantor's death because the consideration was not entire and "it [was] obvious also that the consideration ... passed at different times and therefore it is separable or divisible." *Id.* at 286.

The guaranties in the present case are continuing offers to enter into a series of guaranty contracts. Each contract is supported by separate consideration delivered by the claimants in the form of the separate and discrete deliveries of lumber and supplies. This continuing offer by Frogale terminated with his death.

## III. *Conclusion*

The guaranty in the case at hand states that it shall be considered continuing in nature. This fact, along with the context of the course of dealings between the parties, establishes that this is not a contract where the consideration passed at one time. Instead, the parties' intention was that the guaranty was a continuing offer to enter into a series of contracts in the future. Any transactions that occurred prior to the guarantor's death were complete contracts as adequate consideration had passed. The estate is liable for all contracts entered into before the guarantor's death. However, Frogale's death terminated his ability to continue to make the offer of guaranty.

For the above reasons, I find that the guarantor's death effectively revoked the guaranty as to any transaction occurring after his death, and the estate is

not liable under the guaranty for such transactions. The Commissioner's Report is sustained.