*MRS. BERTHA DEAN, Appellee, v. ESTATE OF MARY A. ATWOOD et al., Appellants.

No. 37955.

FEBRUARY 15, 1927.

*[Opinion, at time of filing, was ordered by the Court not to be published in the official reports. It is here published with the permission of the court.]

H. A. Evans, for appellants.

Prichard & Prichard, for appellee.

DE GRAFF, J.—This action involves a claim against the estate of Mary A. Atwood for a balance of $2,187.20 for services rendered decedent during her lifetime. The petition alleges both an oral and a written contract. Under and by virtue thereof plaintiff states that she furnished board, room, and personal services to Mrs. Atwood from the first day of September, 1921, to the eleventh day of September, 1924, for which services, under the terms of the pleaded oral contract, and as evidenced by a later written agreement, she was to receive the sum of $30 per week. The defendant administrator and certain heirs of Mrs. Atwood answered by a general denial and specifically deny that the services furnished were reasonably worth the sum charged by the claimant, and as an affirmative defense state that said claim has been paid in full.

It appears from the evidence that one J. W. Beggs was appointed the guardian of the property of Mary A. Atwood on September 1, 1921, and that he continued to act for her as such guardian until her death. Thereupon and prior to the commencement of this action the final report of J. W. Beggs, as guardian, was filed and duly approved by the probate court of Monona county, Iowa, and the guardian was discharged.

Briefly stated, the question for decision is, May a person of normal mind, although under legal guardianship, either by herself or acting jointly with her guardian, make an enforceable contract for necessaries so as to bind her and her estate; said contract, though fully executed, never having been approved by the probate court having jurisdiction over the guardianship? Stating the question from the viewpoint of the appellant herein, Is the plaintiff (claimant against the estate of the deceased ward), under such circumstances, compelled to ignore the terms of the

unapproved contract and recover, if at all, on the theory of quantum meruit?

The evidence shows, by a fair preponderance, that, at the time of the appointment of the guardian, Mrs. Atwood was suffering from physical disabilities, but that her mental condition was normal. The petition for appointment was signed and sworn to by Mrs. Atwood. The order of appointment is not set forth in the record, but the petition for appointment is. Mrs. Atwood alleged in her sworn petition that she was ''sound in mind, but unable to get around and transact her business without great hardship to her; that she had rent to collect, taxes to pay, interest to collect, and expenses to pay, and she deems a legally appointed guardian of her property to be the proper and best thing for her,'' and requested the appointment of J. W. Beggs, cashier of the First National Bank of Whiting, Iowa, as such guardian ''to act in her stead and to look after her property and to do everything that she could legally do herself.'' It may be further stated that the said order of appointment has never been questioned or sought to be impeached by any one.

Although the order of appointment, under the provisions of section 3219, Code 1897 (under which the order was entered), may be viewed as improvident and inadvertently entered, it must be considered at this time as a verity. It may be noted that chapter 5, of which section 3219, Code 1897, was a part, has since been amended. See section 12617, Code 1924. Under the then statutory provisions, the court did not have the authority to appoint a person, who, in legal effect, is a trustee or an agent with power of attorney to act for a person of normal mind, in the absence of any prayer or showing that the petition came within the purview of the definition of a person for whom a guardian could be appointed. The legal and logical effect of the appointment in the instant case made the guardian a trustee or agent of the ward to act for her with respect to her property and her property rights.

It is shown, without contradiction, that upon the entry of the order of appointment the ward, with the approval of the guardian, entered into an oral agreement with Bertha Dean, the claimant, for the care and lodging of Mrs. Atwood, and that on the 15th day of April, 1922, a memorandum, which is claimed to embody the terms of the oral agreement, was executed and

signed by Bertha Dean, party of the first part, and J. W. Beggs, legal guardian of Mary A. Atwood, party of the second part.

It may be observed at this point that neither the oral contract nor the later memorandum was authorized or presented to and approved by the probate court, although partial payments under the alleged contract were thereafter made to Bertha Dean by the guardian, which payments were approved by the probate court in reports filed by the instant guardian. In fact, payments in full would have been made by the guardian at the proper time had he possessed ready money belonging to the guardianship estate, and had he not felt that he was protecting his ward on the contract by retaining a portion in case it became necessary "to force Mrs. Dean to carry out her part of the agreement." He also testified upon this trial that the claim of Bertha Dean filed against the estate of Mary A. Atwood, deceased, would have been paid by him (as administrator of her estate), had it not been for the protest and resistance filed by the defendant heirs of Mary A. Atwood.

It therefore appears that the vitality of plaintiff's cause of action, as pleaded by her, is an express contract, and it cannot be questioned that, under the terms thereof, the claimant did respond to the actual necessaries of the ward for a period of three years.

Unquestionably, Mrs. Bertha Dean, appellee herein, had the right to sue for the reasonable value of all services performed by her on behalf of Mary A. Atwood. Did she have the right, under the circumstances, to base her claim in probate on the express contract, and, upon its denial by the administrator by reason of the protest of certain heirs, sue for recovery under the terms of said contract?

As pointed out, the appointment of the guardian was made purely because of her consent and by reason of her physical disability, not because of her mental incompetency. The contract in suit was for necessaries. The guardian testified:

"I made arrangements with Mrs. Dean for the care and lodging of Mrs. Atwood, as her guardian. It was the only arrangement Mrs. Atwood would listen to. I had several talks with them about the terms of this board and care. The terms agreed upon were satisfactory to both of them. We talked of the rates. I thought the rates a little high at the time, that the

estate might be exhausted before her death. Later, Mrs. Dean proposed to take care of her for $30 per week while her money lasted, and if she outlived the estate, to take care of her for her pension money of $30 per month."

The evidence is clear that the care of Mrs. Atwood was no small matter. She was about 80 years of age. She was suffering from physical ailments that required daily attention and personal care on the part of Mrs. Dean. It is not surprising that her own relatives, including her son Joseph, one of the resisting defendants in this case, did not enter upon the scene of action until after the death of Mary A. Atwood.

The trial court submitted this case to the jury on the theory of an express contract, and necessarily viewed the pleaded contract, if one was found to exist, as the basis of recovery, providing that the preponderance of the evidence disclosed that Bertha Dean fully performed on her part "all of the terms of said oral contract." The court also instructed, with respect to the memorandum of agreement signed by the claimant and the guardian, that it was admitted in evidence for the consideration of the jury in determining whether or not the writing embodied the terms and conditions of the oral agreement, but that the writing was not a valid, legal, and subsisting contract which would be binding upon the heirs at law of Mary A. Atwood, since it was not authorized or ratified by the probate court. This instruction was apparently given to meet the contention of the defendants that, although the plaintiff has *a* remedy, she could not invoke *the* remedy suggested by her petition and on the theory adopted by the trial court. On this proposition we deem it unnecessary to express an opinion.

We now turn to the legal issues. It is the general rule that a person, who has been adjudicated incompetent, cannot, while under guardianship, execute a valid and binding contract. A person under guardianship is under the protection of the court.

In re Will of Fenton case, 97 Iowa 192, 66 N. W. 99, it is said:

" 'We are of opinion that, as to most subjects, the decree of the probate court, so long as guardianship continues, is conclusive evidence of the disability of the ward, but that it is not conclusive as to all. For example, the ward, if, in fact, of suffi-

cient capacity, may make a will; for this is an act which the guardian cannot do for him.' "

See, also, In re Estate of Hanrahan, 182 Iowa 1242, 166 N. W. 529.

The Iowa rule is that the contract of an incompetent is voidable, not void, and that the facts and circumstances of each particular case have a controlling influence thereon. See Behrens v. McKenzie, 23 Iowa 333, 92 Am. Dec. 428; Allen v. Berryhill, 27 Iowa 534, 1 Am. Rep. 309; Abbott v. Creal et al., 56 Iowa 175, 9 N. W. 115.

The foregoing cases, however, did not involve the question of guardianship. The case at bar does, but under facts and circumstances which fairly disclose that the ward was not mentally incompetent.

Elliott states the rule thus:

"It does not follow because one has been adjudged insane and is under guardianship that he cannot make a valid contract for necessaries. He can, at least, be held liable for the value of necessary services rendered or of material furnished, when they were, in fact, necessary." Elliott on Contracts, Vol. I, section 374.

In Stannard v. Burns' Adm'r, 63 Vt. 244, 22 A. 460, the rule is stated as follows:

"It does not necessarily follow, when there has been an adjudication by the probate court that a person is insane, that the insanity is of that character which disqualifies him from making a valid contract for necessaries."

In Reeves v. Hunter, 185 Iowa 958, 171 N. W. 567, we said:

"It is settled also that such a contract [not for necessaries] may be enforced, if fair and reasonable, and if both parties cannot be put in statu quo. * * * Such rule, however, has never been applied in this state to a case where the incompetent was under actual guardianship. Neither is any case cited to us from any other jurisdiction where the rule has been applied to an incompetent under guardianship, except, possibly, where a question of necessaries is involved."

The instant appeal does not involve the question of restor-

ing the status quo of the parties. The contract in controversy was fully executed. That is to say, the agreed services were fully performed on the part of the claimant, as pleaded by her, but not fully paid for by the recipient of the services, although full payment would have been made except for the objections of certain heirs at law of the decedent ward.

The salient fact, however, is that the ward, although under an unchallenged and unimpeached guardianship, was mentally competent. It is true that a guardian serves in the discharge of his duties as the agency of the court, and the mere fact that the claim of appellee was not settled by the guardian or confirmed by the probate court before the guardianship was terminated by the death of the ward cannot serve to deprive the plaintiff from enforcing same, if legitimate, against the estate of the deceased in the hands of her administrator. Masters, Executor, v. Jones et al., 158 Ind. 647, 64 N. E. 213.

The trial court was correct in holding that a guardian cannot make a valid contract for his ward without the approval of the probate court, and that the direction or authorization of the court must precede the act of the guardian (Slusher v. Hammond, 94 Iowa 512, 63 N. W. 185) or be subsequently ratified by the court.

It was a recognition that the probate court had jurisdiction of the estate of the ward. The pleaded memorandum of agreement was, at least, probative. It was admissible on the question of the good faith of the plaintiff in rendering the services which must be viewed as necessaries, and also as evidence that her acting guardian thought the same to be necessary, as well as tending to prove that a contract was made for said services between the ward and the claimant herein.

The record discloses that this is a meritorious case, and that the claim is just. It may also be observed that the claim is in probate and was heard before the probate court; and that no pleadings were necessary. The court was not precluded from submitting the cause on any theory which found substantial support on the record facts. We conclude that, under the pleadings and the facts, the theory adopted by the court was correct.

The judgment entered on the verdict is affirmed.

EVANS, C. J., and ALBERT and MORLING, JJ., concur.