**UNION TRUST AND SAVINGS BANK, Fort Dodge, Iowa, Appellant,**

v.

**The STATE BANK, Fort Dodge, Iowa, Conservator of Bonnie Semprini, Appellee.**

**No. 54634.**

Supreme Court of Iowa.

June 17, 1971.

Johnson, Burnquist & Erb, Fort Dodge, for appellant.

Alan Loth, Fort Dodge, for appellee.

RAWLINGS, Justice.

This appeal stems from plaintiff's second action at law against defendant conservator of Bonnie Semprini to recover on a written guaranty agreement. Trial to the court resulted in judgment adverse to plaintiff and it appeals. Defendant cross-appeals. We affirm on plaintiff's appeal.

The basic factual situation, fully set forth in Union Trust & Savings Bank, Fort Dodge, Iowa v. State Bank, Fort Dodge, Iowa, Conservator of Bonnie Semprini, 170 N.W.2d 674 (Iowa), need not be here repeated. We there affirmed trial court's denial of recovery on plaintiff's first action because the five nondiscounted notes involved were not covered by the instant guaranty. September 16, 1969, procedendo accordingly issued.

November 4, 1969, James Semprini, Bonnie's husband and original debtor, appeared at plaintiff bank in response to a request made by one of its officers. Semprini then owed $85,000, evidenced by the aforesaid five promissory instruments. A new note in that sum, due in thirty days, was then signed by Semprini, for which $84,-433.33 was advanced, by draft, immediately endorsed by Semprini and retained by the bank, with credit accordingly given on the prior obligation. This second action is based upon the aforesaid November 4, 1969, allegedly "discounted" note.

August 23, 1967, defendant conservator was appointed. October 3, 1967, plaintiff filed a claim in that conservatorship, on which the above mentioned prior action was premised. So it is apparent, plaintiff was aware of the conservatorship long before the subject note was taken.

Errors asserted by plaintiff in support of a reversal are, essentially, trial court erred in holding, (1) appointment of a conservator terminated any right to act upon or accept the prior ward executed guaranty absent court approval; (2) the loan guaranty, in absence of specific reference to renewal obligations, did not cover the instant note.

On cross-appeal defendant asserts trial court erroneously failed to hold the conservator's answer in plaintiff's prior action stood as a notice of revocation of the guaranty relative to any future transactions thereunder.

I. Prefatorily it is understood:

"In a law action tried to the court as here, our review is not de novo but only on errors assigned. Under this limited extent of review the findings of fact by the trial court have the effect of a special verdict and are equivalent to a jury verdict. If supported by substantial evidence and justified as a matter of law, the judgment will not be disturbed on appeal. Rule 344(f) (1). R.C.P. Stated in other words, in a law action tried to the court its findings of fact having adequate evidentiary support shall not be set aside unless induced by an erroneous view of law. It follows, the rule does not preclude inquiry into the question whether, conceding the truth of a finding of fact, the trial court applied erroneous rules of law which materially affect the decision. Alsco Iowa, Inc. v. Jackson, 254 Iowa 837, 840, 118 N.W.2d 565, 567; France v. Benter, 256 Iowa 534, 536, 128 N.W.2d 268, 270. We may also interfere when such findings are undisputed or no conflicting inferences may be drawn from them." Beneficial Finance Company of Waterloo v. Lamos, 179 N.W.2d 573, 578 (Iowa).

II. The instrument upon which plaintiff now seeks to recover is not limited to a single transaction but rather contemplates a future course of dealing, for an indefinite period of time, in a fixed or limited amount, executed by the guarantor for benefit of her husband, and addressed to plaintiff as sole obligee. It thus appears we have at hand a continuing accommodation special guaranty. See West Branch State Bank v. Farmers Union Exchange, 221 Iowa 1382, 1385, 268 N.W. 155; Fisk & Co. v. Rickel, 108 Iowa 370, 371, 79 N. W. 120; 38 C.J.S. Guaranty §§ 7, 54; 38 Am.Jur.2d, Guaranty, §§ 23, 29.

It may also be generally characterized as an aleatory contract. 3A Corbin on Contracts, §§ 728, 732.

III. Such an instrument remains effective until revoked by the guarantor, or some rule of law, except as to any past transactions, which have served to create a contractual relationship between guarantor and guarantee. See 1 Corbin on Contracts, §§ 38–41, 76; 38 Am.Jur.2d, Guaranty, § 63.

In other words it is a revocable offer of guaranty, effective only on a legally valid acceptance thereof prior to any revocation.

IV. The vital question now posed is whether appointment of a conservator for the guarantor served to effectively revoke this guaranty, then totally unaccepted by the obligee.

Plaintiff concedes a continuing guaranty is usually terminated, *in futuro*, by death of the obligor. See Gay v. Ward, 67 Conn. 147, 34 A. 1025, 1026–1027; American Oil Company v. Wigley's Estate, 251 Miss. 275, 169 So.2d 454, 459–462; Restatement, Security, § 87; 38 Am.Jur.2d, Guaranty, §§ 65–68. See also Stearns Law of Suretyship, Elder's Rev., Fifth Ed., § 4.-20; 1 Corbin on Contracts, § 54.

It is vigorously contended, however, the foregoing rule does not apply in event a conservatorship is established on behalf of a mentally competent guarantor.

In support thereof plaintiff inceptionally argues the revocation by death rule is foundationed upon the need to protect a deceased person's estate, which does not exist when a living competent party is placed under conservatorship since the conservator has power to revoke a continuing guaranty.

We perceive no such instantly persuasive distinction. An executor and a conservator have like powers in that regard. See The Code 1966, Sections 633.646, 633.647, 633.649.

V. Moreover, there is to us no basis, to the extent here relevant, upon which to differentiate between what was once iden-

tified, in this jurisdiction, as a guardian of property and a present day conservator. See Bar Committee Comment, 47 Iowa Code Annotated, page 385; 3 McCarty, Iowa Probate, Second Ed., § 2737; cf. Editorial Comment, 9 A.L.R.3d 777–778.

In light thereof we look first to Anderson v. Schwitzer, 236 Iowa 765, 771, 20 N. W.2d 67, where this court held, it is not accurate to say a guardian of property is "a mere" trustee or agent.

Dealing with the same basic subject in Morse v. Slocum, 192 Iowa 1080, 1092, 186 N.W. 22, we said:

"To say * * * that, after a guardian has been appointed and has entered upon the discharge of the duties of his trust, third parties having full knowledge of the fact may bargain with the ward and obtain from him a valid assignment or conveyance of his entire estate, and thereby oust the court of its jurisdiction over the ward's property, is to defeat the manifest intent and purpose of the statute."

To the same effect is this statement in the factually dissimilar case of Reeves v. Hunter, 185 Iowa 958, 966, 171 N.W. 567, 570:

"Of what avail would it be for a court or a guardian to take possession of the property and estate of a spendthrift in order to conserve it from his squandering, if third parties might at their own will put their own property into the spendthrift's hands and hold him responsible for its restoration. If he was incompetent to withhold his own property from dissipation, he was likewise incompetent to withhold theirs. If such third parties could hold him to such a responsibility it would follow that, in order to make up their own losses resulting from the dissipation of their property by the incompetent, they could resort to and appropriate the very property under conservation in the possession of court and guardian; and they could do this regard-

less of the lack of approval by the court of the transaction out of which the responsibility arose.

"* * * a person under guardianship is under the protection of the court and cannot make a contract which is obligatory upon him as such: (Authorities cited)."

See Olshen v. Kaufman, 235 Or. 423, 385 P.2d 161, 164–168.

More recently this court stated:

"* * * the fact that a ward is alert mentally and has a guardian appointed because of physical inability to manage his own problems creates a situation differing from the more common one where the ward is mentally incompetent. But the powers and duties of the guardian are essentially the same. The wishes of the ward do not change them." In re Guardianship of Anderson, 247 Iowa 1292, 1297, 78 N.W.2d 788, 791.

See 44 C.J.S. Insane Persons § 85a.

It is thus evident all of Bonnie Semprini's property, upon appointment of a conservator, was in *custodia legis*, subject to order of the court. See The Code 1966, Section 633.639; In re Guardianship of Brice, 233 Iowa 183, 188, 8 N.W.2d 576; 39 C.J.S. Guardian and Ward § 74; 39 Am.Jur.2d, Guardian and Ward, § 73.

VI. Furthermore, Restatement, Contracts, § 48, provides: "A revocable offer is terminated by the offeror's death or such insanity as deprives him of legal capacity to enter into the proposed contract."

That view has since been broadened by Restatement, Second, Contracts, Tentative Draft No. 1, § 18Ac, which states:

"Unless a statute provides otherwise, the rule governing lunatics applies also to persons under guardianship by reason of mental illness or defect or as habitual drunkards, narcotics addicts, spendthrifts, aged persons or convicts. It makes no difference that the guardian is

known as a committee, conservator, or curator, or by some other title. Where a statute authorizes the appointment of a guardian on the voluntary application of the ward-to-be without any adjudication of disability, the ward may retain some capacity to contract, subject to subsequent judicial approval, either where the guardian consents or where the guardian's control of the property is not impaired."

Then § 35 of the same Draft provides:

"METHODS OF TERMINATION OF THE POWER OF ACCEPTANCE.

"(1) An offeree's power of acceptance may be terminated by

" *   *   *

"(d) death or incapacity of the offeror or offeree."

Additionally § 48 thereof states:

"DEATH OR INCAPACITY OF OFFEROR OR OFFEREE.

"An offeree's power of acceptance is terminated when the offeree or offeror dies or is deprived of legal capacity to enter into the proposed contract."

VII. On the other hand plaintiff insists Dean v. Estate of Atwood, 221 Iowa 1388, 212 N.W. 371, holds a mentally competent person is not contractually incapacitated by being made a guardianship ward. The cited case involved an application in probate to enforce a ward's contract, created shortly after establishment of a prestatutory, self-initiated guardianship. Distinguishably that contract was for necessaries.

Later, in Anderson v. Schwitzer, 236 Iowa 765, 20 N.W.2d 67, the case of Dean v. Estate of Atwood, *supra* was relied on to sustain the argument that one seeking appointment of a guardian for himself must be sane, so is free to subsequently act *pro se*, despite existence of the resultant guardianship. We rejected this claim and, as aforesaid, cast aside the "mere trustee or agent" view, at the same time holding a ward stands equally protected under any guardianship, be it of the person or property.

To like effect is In re Guardianship of Kappel, 242 Iowa 1021, 1027, 47 N.W.2d 825, and Neidermyer v. Neidermyer, 237 Iowa 685, 687, 22 N.W.2d 346.

Resultantly little, if anything, said in Dean v. Estate of Atwood, *supra*, now lends any persuasive support to plaintiff's stance in the instant case.

Finally, on this subject, The Code 1966, Section 633.637, significantly provides:

"A ward for whom a conservator has been appointed shall not have the power to convey, encumber or dispose of property in any manner, other than by will if he possesses the requisite testamentary capacity."

Cf. 3 McCarty, Iowa Probate, Second Ed., § 2739. See also The Code 1966, Sections 633.638, 633.647.

VIII. It is to us apparent, (1) Bonnie Semprini executed and delivered to plaintiff, as sole obligee, a continuing accommodation guaranty limited only as to amount and nature of any debt to be thereby secured; (2) defendant was appointed conservator for said guarantor; (3) plaintiff had not then accepted the guaranty by any loan effected within the terms thereof; (4) plaintiff became aware of the aforesaid active conservatorship; and (5) subsequently attempted to effectuate a guaranty covered loan by a note renewal scheme never approved or ratified by the conservator or any court of competent jurisdiction.

We are satisfied and now hold the appointment of a conservator for Bonnie Semprini, guarantor known to defendant bank, served to revoke the then unaccepted guaranty, making it thereafter and at all times here concerned of no legal force.

And it is of no consequence that the instrument here sued upon provides, in part, it shall "be a continuing guaranty * * * until revoked by me in writing and a copy of such revocation delivered to the Bank." See Restatement, Second, Contracts, Tentative Draft No. 1, § 46; Stearns Law of Suretyship, Elder's Rev., Fifth Ed., § 7.24; 38 C.J.S. Guaranty § 37; 38 Am.Jur.2d, Guaranty, §§ 65–68; Annots. 81 A.L.R. 795, 42 A.L.R. 926.

Under existing circumstances, trial court's holding in accord herewith is amply supported by substantial evidence and justified as a matter of law.

Having thus disposed of this appeal there is no need to consider plaintiff's remaining assigned error, or that asserted by defendant.

Affirmed.

All Justices concur, except REYNOLDSON, J., who takes no part.