563 N.W.2d 193 (1997)
In the Matter of the CONSERVATORSHIP OF Milton T. LEONARD, An Involuntary Ward,
Milton T. Leonard, Appellant.
No. 96-15.
Supreme Court of Iowa.
April 23, 1997.
Judith O'Donohoe of Eggert, Erb, O'Donohoe, Frye & Von Ah, Charles City, for appellant.
William Werger of Hanson & Werger, Manchester, for appellee-conservator.
Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.
LAVORATO, Justice.
The primary issue in this appeal is whether there was sufficient evidence for the district court's order imposing an involuntary conservatorship on Milton T. Leonard, the proposed ward. We conclude there was not and reverse and remand for an order dismissing the petition for involuntary conservatorship.
On November 29, 1995, the district court held a hearing on a petition for appointment of a conservator for Milton on an involuntary basis. Attorney Francis Wm. Henkels had filed the petition on behalf of Jerald Leonard, Milton's son. At the hearing, Henkels addressed the court on behalf of Jerald in the presence of Milton and Milton's guardian ad litem.
Henkels told the court that Milton had agreed to the conservatorship and to the appointment of his other son, Richard Leonard, as conservator. The court asked Henkels whether the proceeding should be changed from involuntary to voluntary. Henkels told the court that he did not intend to remove the proceeding from involuntary to voluntary.
*194 The court heard no formal evidence, yet it entered an order reciting the following pertinent findings of fact:
Milton T. Leonard is 64 years old residing in Ryan, Iowa.
Milton T. Leonard is the owner of [240 acres of farmland and a residence in Ryan].
In 1990, Milton T. Leonard became involved in what purported to be a tax-saving trust and subsequent to that time and to the present time received advice and counsel from various individuals concerning his responsibility for payment of taxes and operation of the aforementioned real estate.
On or about the 29th day of June, 1995, [the 240 acres of farmland] was seized as a result of Milton T. Leonard's failure to file [various tax forms] and pay [taxes]. This failure [was] the result of inappropriate and improper advice ... given to Milton T. Leonard from those purporting to be trustees protecting his property.
Milton T. Leonard having presented himself and fully aware of the consequences consents to the appointment of a conservator for his property.
Richard Leonard ... is qualified to act as conservator in this matter [and] the clerk shall issue letters of appointment as conservator.
As a result of the tax sale as above indicated, it will be necessary for the conservator to obtain financing in order to redeem the property and authority to do so is necessary and proper in this matter in order to protect the assets of this estate.
All parties have been duly served with adequate and appropriate notice. Jurisdiction in this matter is based upon § 633.552 of the Code of Iowa et seq.
This petition was filed and other services rendered in this matter by attorney Francis Wm. Henkels who was retained by Jerald Leonard, the petitioner herein. All of which services were for the benefit of this estate and for the preservation and protection of the property involved herein. Jerald Leonard has also expended funds for the benefit of this estate and should be reimbursed for said expenses.
Following these findings of fact, the court entered orders: (1) appointing Richard Leonard as conservator without bond; (2) giving the conservator "the power to execute any and all necessary documents in order to secure funding to redeem the property of the estate"; (3) allowing Jerald Leonard to be reimbursed for the expenses he had incurred, including the fees to be paid Henkels, his attorney; and (4) allowing the fees of the guardian ad litem to be paid by the conservatorship. The clerk of court thereafter issued letters of appointment as conservator to Richard Leonard.
The findings of fact made by the court corresponded substantially to the previously filed petition for appointment of a conservator on an involuntary basis. The record, however, reflects no agreement by Milton or his guardian ad litem as to the findings of fact in the order. Moreover, the guardian ad litem had filed an answer generally denying the allegations of the petition. The hearing was only fifteen minutes long and during that time the only statements directed to Milton or his guardian ad litem were the following:
THE COURT: What we would be changing then, it would be from an involuntary to a voluntary, would that be correct? Mr. Leonard, is that your wish that Richard be appointed your conservator? MILTON: Yes, your Honor.
GUARDIAN AD LITEM: And in talking with Mr. Milton Leonard it is my understanding that in light of the fact that Richard is being appointed, he doesn't think that a bond is necessary; is that your opinion? MILTON: That's right, your Honor.
It is from the order recited that Milton appealed. On appeal, Milton contends that (1) he could not consent to an involuntary appointment of a conservator, (2) there is insufficient evidence to support the court's findings of fact, and (3) there was no evidence of his mental incapacity.
Actions for the appointment of a guardian or conservator are triable at law. Iowa Code *195 § 633.33 (1995); In re Guardianship of Murphy, 397 N.W.2d 686, 688 (Iowa 1986). Our review is therefore for errors at law. Iowa R.App. P. 4; Murphy, 397 N.W.2d at 687-88. Because our review is for errors at law, we affirm only if there is substantial evidence to support the district court's findings. Iowa R.App. P. 14(f)(1).
The conservator attempts to uphold the district court's order appointing him conservator on the basis that Milton consented to the appointment on the record. This argument is fraught with several problems. First, the only petition on file was for the involuntary appointment of a conservator under Iowa Code section 633.566. The petition alleged, as this section requires, that Milton "by reason of mental or other incapacity is unable to make or carry out important decisions concerning the proposed ward's financial affairs."
When the court asked Henkels whether the conservatorship would be changed from an involuntary to a voluntary one, the following colloquy took place:
HENKELS: It is a conservatorship, and I don't think we intended to remove it from aan involuntary to a voluntary. THE COURT: All right. Fine.
HENKELS: I believe we're going to remain in the status that we arehe has remained in the status of the order as involuntary.
THE COURT: Fine. I just wanted to show that or notit is still an involuntary, but the petitioner consents to the appointment.
Thus, the hearing proceeded on the basis that the court was dealing with an involuntary conservatorship.
This raises the second problem: Can a proposed ward consent to an involuntary conservatorship? The answer is clearly "no." The definitions of "consent" and "involuntary" are mutually exclusive. "Consent" means the "voluntary agreement by a person in the possession and exercise of sufficient mental capacity to make an intelligent choice to do something proposed by another." Black's Law Dictionary 305 (6th ed. 1990). In contrast, "involuntary" means "[w]ithout will or power of choice; opposed to volition or desire." Id. at 827. In short, an involuntary conservatorship presupposes that the proposed ward has no choice in the matter.
Additionally, the provision for involuntary appointment of a conservator does not allow or provide for a proposed ward to consent to the involuntary appointment of a conservator. See Iowa Code § 633.566. As Milton points out, there is good reason why this provision does not provide for or allow such consent. As a basis for the appointment, section 633.566 requires the court to find that because of "mental, physical or other incapacity" the proposed ward is "unable to make or carry out important decisions concerning the proposed ward's financial affairs." Thus, in making this determination the court cannot presume that the proposed ward has the mental capacity to consent on his or her own behalf without a full exploration of the ward's mental incapacity.
The conservator's fall-back position is that Milton's consent authorized the court to appoint a conservator for him under Iowa Code section 633.572 (appointment of conservator on voluntary petition). Section 633.572 provides that a "conservator may also be appointed by the court upon the verified petition of the proposed ward, without further notice" and "provided the court determines that such appointment will inure to the best interest of the applicant." This argument also fails, not only because the court proceeded on the basis of an involuntary proceeding, but also because Milton did not file a verified petition asking for the appointment of a conservator as section 633.572 requires.
There is, however, a more fundamental reason why the conservator's arguments fail. As mentioned, a significant requirement for the involuntary appointment of a conservator under section 633.566 is that the proposed ward is
[b]y reason of mental, physical or other incapacity ... unable to make or carry out important decisions concerning the proposed ward's financial affairs.
*196 A comparable requirement for the appointment of an involuntary guardian for a proposed ward is that
[b]y reason of mental, physical or other incapacity [the proposed ward] is unable to make or carry out important decisions concerning the proposed ward's person or affairs, other than financial affairs.
Iowa Code § 633.552(2)(a). To pass constitutional muster, we have interpreted this language to mean that the
proposed ward's decision making capacity is so impaired that the ward is unable to care for his or her personal safety or unable to attend to or provide for such necessities as food, shelter, clothing, and medical care, without which physical injury or illness may occur.
In re Guardianship of Hedin, 528 N.W.2d 567, 579 (Iowa 1995).
Recently, our court of appeals applied the Hedin standard to the involuntary appointment of a conservator under Iowa Code section 633.566, the code provision before us now. See In re Guardianship & Conservatorship of Teeter, 537 N.W.2d 808, 810 (Iowa App.1995). The court found the imposition of involuntary conservatorship upon an adult with a brain injury was precluded because there was insufficient evidence that the proposed ward's decision-making process was impaired under this standard. Id.
Here there was neither evidence nor a court finding that Milton's decision-making process to handle his own financial affairs was impaired according to the Hedin standard. There were therefore no grounds for the district court to impose an involuntary conservatorship upon Milton.
We do not mean to imply by our earlier discussion of the so-called voluntary conservatorship under section 633.572 that such a conservatorship is beyond the reach of Hedin. We do not decide that issue because it is not before us.
That brings us to Milton's request for relief. Milton contends the district court lacked jurisdiction to appoint a conservator on an involuntary basis because there was no evidence to support the grounds for the involuntary conservatorship. Milton further contends that all subsequent orders were void and for that reason the conservator had no authority to pay fees to (1) the applicant for the conservatorship, (2) the applicant's attorney, (3) Milton's guardian ad litem, (4) the conservator, or (5) the attorney for the conservator. Milton also contends there was no authority for the conservator to obtain any loan or to redeem the real estate.
Milton wants us to declare void the orders (1) appointing the conservator, (2) granting powers and authority, and (3) requiring payment of various fees. He further asks that we require the individuals receiving any fees out of his assets to refund those sums. See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hughes, 557 N.W.2d 890, 892-93 (Iowa 1996) (distinguishing orders that are void because court lacks subject matter jurisdiction from orders that are erroneous because of insufficiency of evidence to support them; erroneous orders do not undermine court's subject matter jurisdiction).
Milton's request presents a dilemma: All of these people presumably provided services that ultimately resulted in saving Milton's property, and now Milton seeks to keep the fruits of those efforts without paying for them. Given the present state of the record, we must presume Milton was competent throughout the proceedings. Yet he stood by without objection and allowed all involved to take action on his behalf to protect his property. Evidently, as a competent adult, he considered these efforts valuable and entitled to remuneration because he lodged no objection until after the services were performed and paid and the property made secure.
Our court is not a court of original jurisdiction for the restitution-type of relief Milton seeks. Only district courts have jurisdiction for this type of relief. We further note he seeks this relief for the first time on appeal without adequate record to allow a supportable decision. We do note, however, that in the past similar issues have been properly preserved and presented to this court. See, e.g., In re Guardianship of Laufert, 247 Iowa 1352, 1362, 79 N.W.2d 187, 194 (1956); In re Guardianship of Anderson, 247 *197 Iowa 1292, 1297, 78 N.W.2d 788, 791 (1956); In re Guardianship of Meinders, 222 Iowa 236, 238-40, 268 N.W. 537, 538-39 (1936); Dean v. Estate of Atwood, 221 Iowa 1388, 1390-91, 212 N.W. 371, 372 (1927).
Our holding that there was insufficient evidence for imposition of an involuntary conservatorship frees Milton of any restrictions from the law of conservatorship. We limit our decision to a reversal of the district court's order appointing a conservator for Milton and a dismissal of the petition for conservatorship. We remand for an order dismissing the petition.
REVERSED AND REMANDED WITH INSTRUCTIONS.