# IN THE COURT OF APPEALS OF IOWA

No. 16-0253
Filed November 23, 2016

**IN RE THE MATTER OF THE GUARDIANSHIP AND CONSERVATORSHIP OF COLLEEN ROSE SHANNON, Ward**

**DEBORAH COLLEEN SHANNON-DOWNEY,**
     Petitioner-Appellant,

**NICHOLAS A. BAILEY,**
     Guardian ad Litem-Appellant.
_____

Appeal from the Iowa District Court for Jasper County, Paul R. Huscher, Judge.

Deb Shannon Downey appeals the appointment of Larry Shannon as guardian of Colleen Shannon. **AFFIRMED AND REMANDED.**

Andrew B. Howie of Hudson, Mallaney, Shindler & Anderson, P.C., West Des Moines, for petitioner-appellant.

Nicholas A. Bailey of Bailey Law Firm, P.L.L.C., Altoona, guardian ad litem-appellant.

Matthew D. Gardner of Gardner Law Firm, P.C., Urbandale, for guardian and conservator.

Considered by Danilson, C.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

Deb Shannon Downey appeals the appointment of her brother, Larry Shannon, as guardian and conservator (guardian) of their mother. We find the district court did not abuse its discretion in appointing a guardian. However, we note Larry's appointment was not proper pursuant to Iowa Code section 633.64(a) (2015). We affirm the district court's appointment of a guardian but remand in order that a finding be made in accordance with Iowa Code section 633.64(a).

## I. Background Facts and Proceedings

Colleen Shannon, eighty-two years old at the time of the hearing, has been diagnosed with dementia, Alzheimer disease, and depression. Of Colleen's eleven children, two, Deb Shannon Downey and Larry Shannon, sought to be appointed Colleen's guardian. There is a great deal of disagreement and hostility between the siblings over this and many other issues. Colleen's health and ability to live independently have steadily declined. In 2013, Colleen was hospitalized after an accident in her apartment, and eventually Colleen was moved to Deb's home.

Deb's home is located in Newton, Iowa. Deb and her wife, Amy, have a large family with eight children ranging in ages from one to seventeen. Deb cares for the children full time and was able to constantly supervise Colleen. Deb testified Colleen was deeply integrated into the family's life and enjoyed playing an active role saying, "[m]y mom has 11 children, so she understands, you know, the big tables, the big dinners . . . . [S]he told me she wasn't a tenant;

that she wanted to be part of our family. And so I told her that's the way we wanted it to be."

In June 2015, many of Colleen's children were in Des Moines as their father was very ill. Larry and a few other siblings arrived at Deb's house to visit Colleen after visiting their father in the hospital. Larry and Deb had an argument concerning Colleen's future. Larry and the other siblings took Colleen for ice cream, and when they returned, Larry asked to take Colleen to his home to visit for a week. Two weeks later, Larry drove back to Iowa with Colleen. Larry informed Deb that Colleen had decided to move to Larry's home. Deb disagreed, the confrontation escalated, and eventually law enforcement was called. Colleen told the officer she wished to go with Larry. Deb claims she told the officer her brother disagreed with her sexual orientation and marriage because he "was really religious," to which the officer responded, "I am, too." The officer eventually allowed Colleen to leave with Larry.

Larry took Colleen to his home in Buffalo, Missouri. Larry has a cow-calf operation and works from home, and his wife, Cindy, works part time. Colleen had separate living quarters, which had formerly been used as a bed and breakfast. Colleen testified she enjoyed living with Larry because he has no children and there are fewer responsibilities. Deb claims she was rarely allowed to visit or even speak with her mother and that all these communications were closely monitored. Both Deb and Larry claim the other improperly managed Colleen's bank account.

Deb filed a petition for an involuntary appointment of a temporary and permanent guardian and conservator on June 20, 2015. A guardian ad litem was

appointed for Colleen, and a hearing was held on November 17-18, 2015, and January 6-7, 2016. The district court ruled and appointed Larry as Colleen's guardian, subject to a number of conditions, including allowing unsupervised visitation with any of Colleen's other children. Deb appeals.

## II. Standard of Review

An action for the involuntary appointment of a guardian and conservator is tried at law. *See* Iowa Code § 633.33. We therefore review for correction of errors at law. *In re Conservatorship of Leonard*, 563 N.W.2d 193, 195 (Iowa 1997). We are bound by findings of facts if they are supported by substantial evidence. Iowa R. App. P. 6.904(3)(a). Evidence is substantial if a reasonable mind could use it to reach the same conclusion. *Waukon Auto Supply v. Farmers & Merchs. Sav. Bank*, 440 N.W.2d 844, 846 (Iowa 1989). However, we "will not interfere in the selection of a guardian made by a trial court unless it is shown that there has been a clear abuse of discretion in making the appointment." *Arent v. Arent*, 32 N.W.2d 660, 661 (Iowa 1948). Our supreme court has held "an abuse of discretion will not be found unless a party shows that such discretion was exercised by the court on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Mays v. C. Mac Chambers Co.,* 490 N.W.2d 800, 803 (Iowa 1992).

## III. Selection of Guardian

Deb challenges the appointment of Larry as guardian. She claims Larry is unfit to be appointed guardian and also claims she is a more suitable option to care for Colleen.

Deb claims Larry has a history of concerning behavior. In the past, he has demonstrated an explosive temper often leading to allegations of violence. Deb also accused Larry of failing to properly administer medication to Colleen. Additionally, Deb presented evidence that Colleen's medications were not refilled while Colleen was in Larry's care, as well as testifying Larry had expressed doubts about the necessity of providing some medications to Colleen, stating faith and prayer could cure her. Larry also has been accused of interfering with visitation between Deb, and the siblings who support her, and Colleen. Some evidence of this retaliatory behavior exists; Deb was able to visit only a few times after Colleen was moved to Larry's home, including one instance where Deb was only allowed thirty minutes before being forced to drive nearly 350 miles back to Iowa. Telephone contact between Deb and Colleen was very limited and was often monitored by Larry.

However, during the course of the hearing, testimony showed concerns about Deb's fitness to be Colleen's guardian. Larry, and the siblings supporting him, accused Deb of being mentally and verbally abusive to Colleen. While the guardian ad litem and others found Colleen's living conditions to be acceptable at Deb's house, Larry and others were appalled by where their mother was living and testified Colleen continually pleaded to be moved out. There were also accusations Deb did not administer Colleen's medication when Colleen asked not to take it. Deb's house, with eight children of disparate ages, is a fast-paced environment, not an ideal situation for an eighty year old with increasing dementia and other cognitive issues, an opinion shared by the district court and a

geriatric doctor who testified at the hearing. There were also accusations Deb misused Colleen's funds by requiring her to pay "rent."

Both Deb and Larry have issues that cause us concern. While it is likely not all of these claims are true, or are at least exaggerated to some degree, we give deference to the district court in this determination in recognition of the unique ability to view the testimony first hand. At the conclusion of the hearing, the district court dictated findings of fact, conclusions of law, and its ruling into the record. The district court focused heavily on two issues in deciding the case—first, Colleen's expressed desire to reside with Larry; second, ensuring fair and equitable visitation.

The district court noted both Larry and Deb could provide an acceptable living arrangement for Colleen. However, the district court gave great weight to Colleen's expressed desire to live with Larry. While contested testimony during the hearing placed Colleen's mental age between six and nine, Dr. Robert Bender, who testified as an expert witness, stated Colleen should be allowed some input into significant decisions in her life and her opinions should be taken into "consideration." The district court placed a strict, "one strike" condition on Larry's guardianship as well, revoking the guardianship if Larry failed to grant equitable visitation. We hold the district court did not abuse its discretion, and therefore, we affirm the appointment of a guardian.

## IV. Nonresident Fiduciary

All "natural person[s] of full age, who [are] resident[s] of this state" are able to serve as fiduciaries unless incompetent or determined by the court to be unsuitable. Iowa Code § 633.63(1). A nonresident must be of full age,

competent, suitable as determined by the court, and either serve with a resident fiduciary, or may be appointed to serve alone "for good cause shown." *Id.* § 633.64(a). Larry lives in Buffalo, Missouri, and has taken Colleen out of state. Although, neither party raised the issue of a nonresident guardian at the hearing, we determine a finding of good cause, or appointment of a resident co-fiduciary, must be made in order to fully protect the ward and comply with Iowa law. Therefore, we remand for resolution of this issue.

**AFFIRMED AND REMANDED.**