# IN THE COURT OF APPEALS OF IOWA

No. 17-2108
Filed October 10, 2018

**IN THE MATTER OF THE GUARDIANSHIP AND CONSERVATORSHIP OF LORI FEISTNER,**
Ward-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Peter A. Keller, Judge.


Lori Feistner appeals from an order establishing an involuntary guardianship and conservatorship. **REVERSED AND REMANDED WITH INSTRUCTIONS.**


Daniel M. Northfield, Urbandale, for appellant.

Kenneth Michael Steffen, Moline, pro se guardian/conservator.


Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

This case arises out of the appointment of a guardian and conservator for Lori Feistner. On appeal, Feistner contends the district court erred in appointing her a guardian and conservator.

The petitioner in this case is Lori's brother, Kenneth (Mike) Steffen. Steffen filed this petition for guardianship and conservatorship because of his concern for his sister's well-being. At the time of trial, Feistner was fifty-six years old. She was married to her husband of twenty-six years, Roger Feistner. However, Roger was in the process of seeking a divorce due to Feistner's erratic and aggressive behavior. Roger had communicated his intent to seek a divorce to Feistner and to Steffen. Steffen testified he sought the guardianship and conservatorship primarily to help Feistner transition during the period of divorce and help her with her financial situation.

Feistner's erratic and aggressive behavior is a symptom of her mental-health condition. Approximately fifteen years prior to trial, Feistner begin to display symptoms of mental illness. Her symptoms increased over time, including mania that would keep her up at nights and result in aggressive or confrontational behavior toward others. Eventually, Feistner was diagnosed with bipolar, type I, disorder. She was prescribed medication for her condition, but she frequently failed to take her prescribed medication because of the way it made her feel and its adverse side effects, including weight gain. In the decade prior to trial, Feistner had been civilly committed on six occasions. The duration of her commitments ranged from several days to several weeks.

Our review of this case is for the correction of legal error. *See* Iowa Code § 633.555 (2017) (providing actions shall be triable at law); *In re Conservatorship of Leonard*, 563 N.W.2d 193, 195 (Iowa 1997) (stating conservatorship actions are reviewed for errors at law); *In re Guardianship of S.K.M.*, No. 16-1537, 2017 WL 5185427, at *3 (Iowa Ct. App. Nov. 8, 2017) (concluding guardianship proceedings are reviewed for errors at law). The district court's findings are binding on us if supported by substantial evidence. *See Leonard*, 563 N.W.2d at 195. Evidence is substantial if a reasonable person "would accept it as adequate to reach the same findings." *In re Conservatorship of Deremiah*, 477 N.W.2d 691, 693 (Iowa Ct. App. 1991). We note the district court in this case made no specific findings of fact on any of the issues. Instead, the district court stated it reviewed the evidence and found "by clear and convincing evidence that the allegations of the said Petition are true and material and have been fully sustained by the evidence offered."

The petitioner has the burden of proving the guardianship and/or conservatorship is necessary and must do so by clear and convincing evidence. *See* Iowa Code § 633.551(1), (2). "Clear and convincing evidence is more than a preponderance of the evidence and less than evidence beyond a reasonable doubt." *In re L.G.*, 532 N.W.2d 478, 481 (Iowa Ct. App. 1995). "It is the highest evidentiary burden in civil cases." *In re M.S.*, 889 N.W.2d 675, 679 (Iowa Ct. App. 2016). "It means there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.* Because of the ward's significant interest in managing her own affairs, we cannot merely rubber stamp what has come before; it is our task as a court of review to ensure

the petitioner came forth with the quantum and quality of evidence necessary to prove his case. *Cf. In re Guardianship of Hedin*, 528 N.W.2d 567, 573 (Iowa 1995) ("Recently, several courts have agreed with commentators that a guardianship 'involves significant loss of liberty similar to that present in an involuntary civil commitment for treatment of mental illness.'" (quoting *In re Guardianship of Reyes*, 731 P.2d 130,131 (Ariz. Ct. App. 1986))).

We first address the question of whether the petitioner proved the grounds necessary to establish an involuntary guardianship. The district court may establish an involuntary guardianship for an adult "whose decision-making capacity is so impaired that the person is unable to care for the person's personal safety or to attend to or provide for necessities for the person such as food, shelter, clothing, or medical care, without which physical injury or illness might occur." Iowa Code § 633.552(2)(a); *accord Hedin*, 526 N.W.2d at 581. This requires evidence

> showing that the ward or proposed ward is unable to think or act for himself or herself as to matters concerning the ward's personal health, safety, and general welfare. In addition, the district court's findings of fact based upon this evidence should support the powers conferred on the guardian. These powers should be articulated as clearly as each case permits.

*Id.* at 579 (altered for readability).

Steffen failed to prove by clear and convincing evidence a guardianship is necessary. Feistner suffers from bipolar disorder. Her disorder causes her to be manic and to be aggressive and confrontational with others. However, there is no evidence her capacity to make decisions is so impaired that she poses a risk of harm to herself. *See* Iowa Code § 633.552(2)(a); *Hedin*, 526 N.W.2d at 581.

Indeed, the record is to the contrary. Feistner testified she could provide for herself and live on her own. She has a full-time job in a call center assisting in-bound callers. She has a car and a driver's license. She does not have any thoughts of suicidal ideation or self-harm. Roger testified Feistner could live alone: "I think she could live alone. I think she could function on her own." Steffen testified Feistner can perform the five major activities of daily living—bathing, dressing, transferring (movement and mobility), toileting, and eating. He testified, "She could function on her own." He testified Feistner was smart, can and should be able to vote on her own, and can and should make a decision to remarry. In sum, there is no evidence establishing Feistner's decision-making capacity is so impaired that she presents a risk of physical harm to herself. The establishment of the guardianship was in error. *See In re Guardianship and Conservatorship of Teeter*, 537 N.W.2d 808, 810 (Iowa Ct. App. 1995) ("The liberty interests as well as the stigma in being defined as an incapacitated person require before there be a determination of whether an adult can make responsible decisions with regard to his or her safety or property, there must first be a finding his or her decision-making process is so impaired he or she is not able to care for his or her own personal safety and is not able to provide necessities of life.").

We next address the establishment of the involuntary conservatorship. The district court may establish an involuntary conservatorship only upon clear and convincing evidence that the proposed ward's "decision-making capacity is so impaired that the person is unable to make, communicate, or carry out important decisions concerning the person's financial affairs." *See* Iowa Code § 633.566(2)(a).

As with the guardianship, Steffen failed to prove by clear and convincing evidence the need for a conservatorship. Steffen testified his primary motivation for establishing a guardianship or conservatorship was his concern for Feistner's ability to manage her finances after the divorce. He noted Roger managed the couple's finances during the marriage so Feistner had little experience. Steffen's concern is insufficient evidence to establish a guardianship. *See In re Guardianship of F.W. Jr.*, No. 11-1574, 2012 WL 5355801, at *7 (Iowa Ct. App. Oct. 31, 2012) (noting people may handle their finances in different ways without justifying a conservatorship); *Teeter*, 537 N.W.2d at 810 (concluding foolish spending alone is not sufficient to demonstrate incompetency). There is no evidence Feistner's decision-making capacity is so impaired that she cannot manage her financial affairs. The evidence is actually to the contrary. There is no evidence of any past financial mismanagement. *Cf. In re Guardianship of Evans*, No. 16-2192, 2017 WL 4570438, at *3 (Iowa Ct. App. Oct. 11, 2017) (finding ward's inability "to make and carry out important financial decisions regarding her financial affairs," as demonstrated by her history of sharing her debit card; ignorance of her bills and payment procedures; and inability to consistently pay her rent, supported the establishment of a conservatorship).

There is no evidence from which one could infer a future inability to manage her affairs. As noted above, Feistner has a full-time position in a call center assisting in-bound callers. She has managed her own checking account for four decades. Her trial testimony made clear she understood her finances. She explained how she intended to use her property settlement in the impending divorce to purchase a condominium for herself because she did not want to pay

rent. She appeared knowledgeable regarding the expenses associated with daily living, including food, transportation, and tax expenses and how she would need to work to pay those items.

In sum, there is not clear and convincing evidence nor a factual finding that the proposed ward had impaired decision-making capacity and the need for an involuntary guardianship or conservatorship. The district court erred in concluding otherwise. We remand this matter for entry of an order dismissing the petition. *See, e.g.*, *Leonard*, 563 N.W.2d at 196 (concluding "there was neither evidence nor a court finding that the [ward's] decision-making process to handle his own financial affairs was impaired according to the *Hedin* standard" and reversing and remanding with instructions to dismiss the petition); *Teeter*, 537 N.W.2d at 810 (reversing and dismissing).

**REVERSED AND REMANDED WITH INSTRUCTIONS.**