# IN THE COURT OF APPEALS OF IOWA

No. 20-0946
Filed November 3, 2021

**IN THE INTEREST OF THE GUARDIANSHIP AND CONSERVATORSHIP OF S.M.P.,**

**S.M.P.,**
 Appellant.
_____

 Appeal from the Iowa District Court for Linn County, Paul D. Miller, Judge.


 S.M.P. appeals the district court order appointing her a guardian and conservator. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


 David R. Fiester, Cedar Rapids, for appellant.

 James T. Peters of Peters and Longmuir, PLC, Independence, for appellees.


 Considered by Bower, C.J., and Vaitheswaran, and Schumacher, JJ.

**VAITHESWARAN, Judge.**

A daughter filed a petition seeking the appointment of a guardian and conservator for her seventy-year-old mother, S.M.P. The daughter alleged her mother was "refusing to take prescribed medications and allowing them to accumulate," "ha[d] allowed food to accumulate and rot in the refrigerator and [was] likely not eating sufficiently to maintain health," was "currently hospitalized with limited coherence," and was "currently unable [to] manage financial affairs without assistance." She further alleged there was "no less-restrictive alternative to appointing a guardian and conservator . . . such as third-party assistance," and a "limited guardianship and/or conservatorship [was] not appropriate" because her mother "currently [was] not capable of making decisions . . . or providing rational guidance to a third-party to carry out directions that would be in [her] physical and financ[ial] best interest."

Following a hearing, the district court appointed the daughter guardian and another person conservator. The mother appealed.

Iowa Code chapter 633 (2020) governs the appointment of guardians and conservators. Recent legislative amendments, effective January 1, 2020, apply to this case.[1]

"Actions . . . for the involuntary appointment of guardians and conservators . . . shall be triable in probate as law actions." Iowa Code § 633.33. Accordingly, our review is for errors of law. "Since we are reviewing on error, we will affirm if

---

[1] *See* 2019 Iowa Acts ch. 57, § 44 ("This Act applies to guardianships and guardianship proceedings for adults and conservatorships and conservatorship proceedings for adults and minors established or pending before, on, or after January 1, 2020."). The petition was filed on April 28, 2020.

there is substantial evidence to support the district court's findings." *In re Guardianship & Conservatorship of D.D.H.*, 538 N.W.2d 881, 883 (Iowa Ct. App. 1995).

"The burden of persuasion is on the petitioner in an initial proceeding to appoint a guardian or conservator." Iowa Code § 633.551(2). The district court must "find[ ] by clear and convincing evidence" that "[t]he decision-making capacity of the respondent is so impaired that the respondent is unable to care for the respondent's safety, or to provide for necessities such as food, shelter, clothing, or medical care without which physical injury or illness may occur" and "[t]he appointment of a guardian is in the best interest of the respondent." Iowa Code § 633.552(1)(a), (b).

The district court was persuaded to appoint a guardian on the basis of a "[n]europsychological [e]valuation, the testimony of [a] social worker . . . , [and] the fact that [the mother was] under a Chapter 229 mental health commitment." This evidence, the court determined, established that the mother's "decision-making capacity" was "impaired to the extent that she [was] unable to care for her safety or to provide for necessities such as food, shelter, clothing, or medical care without which physical injury or illness [might] occur."

The psychological evaluation cited by the court and prepared shortly before the guardianship hearing did indeed support the court's determination. A board certified neuropsychologist opined that "there [were] some significant diffuse cognitive deficits occurring." She stated the cognitive deficits "le[ ]d to significant concern for decision-making and safety." She acknowledged the deficits might be "treatable" if their etiology could be determined but found the mother lacked an

"understanding of the circumstances and options available" and, as a result, did "not have the capacity to make well-informed medical decisions on her own behalf at [that] time." The neuropsychologist "recommended that someone be nearby and able to insure the safety of the patient 24-hours a day," "someone else oversee all medications to ensure they are being taken as prescribed," "she find alternative transportation options" to driving, given her "significant difficulties . . . in visual attention," and "she no longer operate a stovetop or oven unsupervised as this could pose a safety risk."

The social worker agreed with the neuropsychologist's recommendations. She testified the mother lacked "acuity and d[id] need a guardian and conservator." The social worker acknowledged that during her committal, the mother kept herself clean, was "an excellent walker," had no issues with eating or going to the restroom, and was compliant with medication administered by staff. But she opined the mother "need[ed] assistance with . . . cooking and making sure she [got] her meals and [took] her medication."

The commitment referenced by the district court followed an emergency department visit during which the mother "appeared to have altered mental status" and "multiple hospitalizations in the [previous] year, and questionable ability to care for herself independently." Some of the cognitive impairment was attributed to a medication the mother took for a movement disorder which, in turn, was a side effect of another medication. But, whatever the cause, the impairments affected the mother's ability to manage her medical care independently.

The three pieces of evidence cited by the district court—the psychological evaluation, social worker's testimony, and commitment—amount to substantial

evidence in support of the appointment of a guardian. While the mother's testimony called some of the evidence into question, the substantial evidence standard of review precludes us "from weighing the evidence or the credibility of the witnesses." *In re Conservatorship of Deremiah*, 477 N.W.2d 691, 693 (Iowa Ct. App. 1991) ("[I]n case of doubt or ambiguity," we are obligated to "construe the findings to uphold, rather than defeat, the trial court's judgment."); *see also In re Guardianship & Conservatorship of Hunter*, No. 02-1225, 2003 WL 22805330, at *1 (Iowa Ct. App. Nov. 26, 2003) (citing *In re Conservatorship of Deremiah*, 477 N.W.2d at 693); *cf. In re Guardianship of Feistner*, No. 17-2108, 2018 WL 4913669, at *2 (Iowa Ct. App. Oct. 10, 2018) (concluding the district court erred in appointing a guardian where the respondent did "not have any thoughts of suicidal ideation or self-harm"; "ha[d] a full-time job" and "a car and a driver's license"; "could live alone"; and could "perform the five major activities of daily living— bathing, dressing, transferring (movement and mobility), toileting, and eating").

Significantly, the district court specified and partially limited the guardian's duties in accordance with Iowa Code section 633.635(3).[2] In paragraph (b) of its specifications and limitations, the court required judicial approval for certain

---

[2] The provision states in full:

> A guardian may be granted the following powers which may only be exercised upon court approval:
>
> a. Changing, at the guardian's request, the protected person's permanent residence to a nursing home, other secure facility, or secure portion of a facility that restricts the protected person's ability to leave or have visitors, unless advance notice of the change was included in the guardian's initial care plan that was approved by the court. In an emergency situation, the court shall review the request for approval on an expedited basis.

Iowa Code § 633.635(3)(a).

actions, including a transfer of guardianship to another state if the guardian relocated to that state.

The limitation was well taken. *See* Iowa Code § 633.551(3) ("In determining whether a guardianship or conservatorship is to be established, modified, or terminated, the district court shall consider if a limited guardianship or conservatorship pursuant to section 633.635 or 633.637 is appropriate."). That said, we are convinced the record supports a broader limitation on the guardian's exercise of her power to determine the mother's permanent placement.

It was undisputed that mother and daughter had a fraught relationship. The daughter testified she was "estranged" from her mother and the two "never" spoke prior to the hospitalization that precipitated the filing of the guardianship petition. The daughter had never been to her mother's home prior to that hospitalization. She was not "aware of how [her mother] spen[t] her days."

In light of the daughter's minimal engagement with her mother, we conclude the mother's best interests require court approval of any change in her "permanent residence to a nursing home, other secure facility, or secure portion of a facility that restricts the protected person's ability to leave or have visitors." *See id.* § 633.635(3)(a). We remand for modification of paragraph (b) to include this limitation.

We turn to the mother's assertion that the district court erred in failing to consider "whether third party assistance was available to" her. *See id.* § 633.551(4) ("[T]he court shall consider credible evidence as to whether there are other less restrictive alternatives, including third-party assistance, that would meet the needs of the respondent or the protected person."). The burden of establishing the

availability of third party assistance does not rest with either the person seeking the appointment of a guardian or the person for whom a guardianship is sought. *Id.* ("[N]either party to the action shall have the burden to produce such evidence relating to other less restrictive alternatives, including but not limited to third-party assistance."). With the exception of the mother's testimony that she could enlist friends' help if needed, no one identified a third party who was assigned to step in if called upon to do so.

The mother concedes "[v]ery little was said in this hearing regarding what third-party assistance may be available to" her. She further acknowledges "[i]t is unclear to what extent [she] has or is [in] need of third-party assistance." In light of the state of the record and these concessions, we conclude the district court did not err in failing to consider the issue of third-party assistance.

We are left with the district court's appointment of a conservator. The court may "appoint a conservator for an adult if the court finds by clear and convincing evidence" that "[t]he decision-making capacity of the respondent is so impaired that the respondent is unable to make, communicate, or carry out important decisions concerning the respondent's financial affairs" and "[t]he appointment of a conservator is in the best interest of the respondent." *Id.* § 633.553(1)(a), (b).

It was undisputed that the mother oversaw her finances. She identified the amount she paid for her home and the amount of debt on the home. She also identified the precise amount of her monthly mortgage and car payments. Finally, she specified the sources and amounts of her income. She testified she had no overdrafts in her account and she saved any income over and above her expenses.

As noted at the outset, the daughter, as petitioner, had the burden to persuade the court that the mother could not manage her financial affairs. She presented scant if any evidence to carry her burden. The district court conceded as much, noting that the mother "answered a series of financial questions appropriately." Because the record lacks substantial evidence to support the appointment of a conservator, we reverse the appointment. *See*, *e.g.*, *In re Conservatorship of Leonard*, 563 N.W.2d 193, 196 (Iowa 1997) (concluding "there was neither evidence nor a court finding that the [respondent's] decision-making process to handle his own financial affairs was impaired"); *Feistner*, 2018 WL 4913669, at *2–3 ("There is no evidence of any past financial mismanagement" or "a future inability to manage her affairs.").

We affirm the appointment of a guardian and remand for expansion of the limitation on the guardian's powers set forth in paragraph (b) of the order to include a requirement of court approval for any more restrictive permanent placement of the mother. We reverse the appointment of a conservator.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**